Angela BOSDORF, individually and as the Personal Representative of the Estate and Heirs of Frank Rainier Bosdorf, deceased, and as Mother and Natural Guardian of Dominque Bosdorf, a minor; Reinhold Bosdorf; Elsbeth Bosdorf, Plaintiffs,

v.

Lamar BEACH; J & L Enterprises, Inc.; Harry Charles Sinnamon; Judy Ann Sinnamon; Safe Divers, Inc.; and Edwin Osgood Bussey, Defendants.

No. 99–1095–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 12, 1999.

**1338**

William G. Burd, Burd, Lozano, & Zacherl, LLP, Miami, FL, Gerald C. Sterns, Sterns & Walker, Oakland, CA, Francis Augustine Zacherl, III, Burd, Lozano, & Zacherl, LLP, Miami, FL, for plaintiffs.

D. Arthur Kelsey, Carl Gray, Hunton & Williams, Norfolk, VA, Samuel Alberto Danon, Hunton & Williams, Miami, FL, for defendants.

### ORDER

EDWARD B. DAVIS, Chief Judge.

THIS MATTER is before the Court on a Motion to Dismiss by Defendants Lamar Beach ("Beach"); J & L Enterprises, Inc. ("J & L"); Harry Charles Sinnamon ("Mr.Sinnamon"); Judy Ann Sinnamon ("Ms.Sinnamon"); Safe Divers, Inc. ("Safe Divers"); and Edwin Bussey ("Bussey") (collectively "Defendants") (filed July 6, 1999). Defendants allege that this Court should dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.Pro. 12(b)(1) for lack of subject matter jurisdiction and that the Court should abstain from adjudicating the case under Rule 12(b)(1), 12(b)(6), and settled principles of abstention. In addition, Defendants Beach and J & L also ask that the Court dismiss Plaintiffs' claims against them for lack of personal jurisdiction pursuant to Fed.Rule Civ.P. 12(b)(2).

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from a boating and diving accident that resulted in the death of Frank Rainier Bosdorf ("Decedent") on May 24, 1996. The Decedent was struck and killed by a boat called the M/Y Miramar as he was surfacing from a dive off the coast of Mexico. The Decedent's family and personal representatives ("Plaintiffs") have filed four separate lawsuits based on the accident—two in North Carolina and two in Florida.

Plaintiffs filed their first suit against Defendants and the M/Y Miramar in the United States District Court for the Middle District of North Carolina on May 22, 1998. That court dismissed the action against the M/Y Miramar because the vessel had not been "arrested,"[1] and also dismissed claims against Defendants Safe Divers, Mr. and Ms. Sinnamon, and Bussey for lack of personal jurisdiction.[2] Claims remain pending in that action against Defendants Beach and J & L, and trial has been set for July 2000.[3]

On June 24, 1998, Plaintiffs filed a second suit against the Defendants in the Circuit Court of the 11th Judicial Circuit

---

1. Plaintiffs subsequently filed a second suit against the M/Y Miramar in the United States District Court for the Eastern District of North Carolina on May 21, 1999.

2. Defendants Bussey and the Sinnamons are Florida citizens and residents. Defendant Safe Divers is a Florida corporation.

3. Defendant J & L, a North Carolina corporation, is the owner of the M/Y Miramar. Defendant Beach, a North Carolina resident and citizen, is the president of J & L.

in and for Dade County, Florida. Defendants Beach and J & L moved to dismiss the case against them for lack of personal jurisdiction. On January 14, 1999, after hearing oral argument on the motion to dismiss, the state court judge granted the motion, concluding that Defendants Beach and J & L had insufficient contacts with the State of Florida for the exercise of personal jurisdiction over those defendants. Approximately three months after the Florida court's decision to dismiss claims against Defendants Beach and J & L for lack of personal jurisdiction, Plaintiffs filed suit in this Court against all six original Defendants, raising the same claims as were asserted in the previous two cases.

Defendants' motion to dismiss Plaintiffs' action raises three arguments. First, Defendants maintain that Plaintiffs' suit should be dismissed for lack of subject matter jurisdiction pursuant to the *Rooker–Feldman* Doctrine. Next, Defendants Beach and J & L argue that the action should be dismissed as to them for want of personal jurisdiction. Finally, Defendants argue that this Court should decline to exercise subject matter jurisdiction under settled principles of abstention.

## II. DISCUSSION

### A. Dismissal Under the Rooker–Feldman Doctrine

■ "According to the *Rooker–Feldman* doctrine, United States district courts do not have subject matter jurisdiction to review the judgments of a state court." *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 1315, 75 L.Ed.2d 206 (1983).[4] The essence of the doctrine is that federal district courts are barred from engaging in appellate review of state court determinations or considering collateral attacks on state court civil judgments. *See Centres,*

*Inc. v. Town of Brookfield, Wisconsin,* 148 F.3d 699, 701–02 (7th Cir.1998). Litigants who believe that they have been wronged by a state court ruling on a particular issue must appeal the decision through the state appellate courts and then proceed on to the U.S. Supreme Court. *See id.* The doctrine applies not only to claims actually raised in state court, but also to claims not raised in the state court but "inextricably intertwined" with the state court judgment. *See Powell,* 80 F.3d at 466; *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir. 1995).

■ The crucial question in determining the applicability of *Rooker–Feldman* is whether the relief requested of the federal court would effectively reverse or void the state court's ruling. *See Olson Farms, Inc. v. Barbosa,* 134 F.3d 933, 936 (9th Cir.1998) (*Rooker–Feldman* clearly bars federal courts from reviewing jurisdictional decisions of state courts). If a federal court's decision on an issue requires a determination that the state court was wrong, then the action is properly characterized as an appeal and the federal court cannot hear the case. *See Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995).

■ Both the timing of the filing of the federal and state actions, as well as the timing of the ruling in the state case are relevant in deciding whether the federal action should be characterized as an appeal. For example, if the federal action was filed prior to the state action, it cannot be said that the party aggrieved by the state court's ruling filed the federal case to "appeal" the state court's ruling. *See Doctor's Associates, Inc. v. Distajo,* 107 F.3d 126, 138 (2d Cir.1997) (when federal action is filed prior to adverse state action, party is not seeking appellate relief from federal courts); *Texaco Inc. v. Pennzoil Co.,* 784 F.2d 1133, 1143 (2nd Cir.1986), *rev'd on*

---

4. The doctrine is premised upon two statutes. *See Powell v. Powell,* 80 F.3d 464, 466 (11th Cir.1996). First, Title 28 U.S.C. § 1257 limits federal review of state court proceedings to the United States Supreme Court. *See id.* Second, Title 28 U.S.C. § 1331 provides that U.S. district courts are courts of original jurisdiction. *See id.* Accordingly, district courts are without jurisdiction to sit in review of state court decisions.

*other grounds,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (*Rooker–Feldman* applicable "[o]nce a litigant has received an adverse adjudication" on an issue in state court).

As with abstention, much of the justification behind the *Rooker–Feldman* doctrine is premised on respect for state courts. *See Bryant v. Sylvester,* 1995 WL 265303 \*2 (3d Cir.1995) (district courts should presume that pending state court proceedings can correctly resolve legal issues), *vacated on other grounds,* 516 U.S. 1105, 116 S.Ct. 899, 133 L.Ed.2d 834 (1996). A second justification for the doctrine is its concern with finality. *See id.* at \*3. Like res judicata and collateral estoppel, the *Rooker–Feldman* doctrine is intended to ensure that litigants do not take multiple bites from the same apple. *See id.* Once a litigant's claims have been adjudicated in the state court system, that litigant should not also have access to the entire federal court system. *See id.* at \*2.

■ The *Rooker–Feldman* Doctrine is "at a minimum" coextensive with the principles of res judicata and collateral estoppel. *See Doctor's,* 107 F.3d at 137 (*citing Moccio v. New York State Office of Court Administration,* 95 F.3d 195, 199–200 (2d Cir.1996)). Thus, litigation in federal court on an issue previously addressed by a state court would be barred under the *Rooker–Feldman* doctrine if it would be barred by res judicata or collateral estoppel *See id.* The *Rooker–Feldman* doctrine, however, goes farther than these preclusion doctrines in that it does not require a final judgment before giving preclusive effect to a state court order. *See id. Rooker–Feldman* also precludes federal courts from reviewing non-final and interlocutory state judgments. As stated by the Second Circuit, "[it] cannot be the

meaning of *Rooker–Feldman* that while the inferior federal courts are barred from reviewing final decisions of state courts, they are free to review interlocutory orders." *Id.* Under this reasoning, the *Rooker–Feldman* doctrine bars a federal court from reviewing the orders of state courts even when res judicata or collateral estoppel would be inapplicable due to the lack of final judgment.[5]

■ With this sketch of the *Rooker–Feldman* doctrine in mind, the Court turns now to evaluate it in light of the circumstances presented in the instant case. On January 14, a Florida state court dismissed Plaintiffs' claims against Defendants J & L and Beach for lack of personal jurisdiction. Instead of pursuing an appeal of the jurisdictional decision through the Florida appellate system, Plaintiffs chose to file the exact same suit against the exact same Defendants in this Court, including the two defendants that the state court determined should be dismissed for want of personal jurisdiction.

Had the case in state court continued to a final adjudication or had Plaintiffs' case been dismissed as to all Defendants instead of just two, res judicata or collateral estoppel would prevent this court from relitigating the existence of personal jurisdiction. *See Lops v. Lops,* 140 F.3d 927, 937 (11th Cir.1998) (state court's final dismissal or final judgment on personal jurisdiction grounds will be given preclusive effect in federal court). The wrinkle in this case is that the action remains pending as to some defendants, thus the dismissal as to Defendants Beach and J & L was interlocutory and res judicata and collateral estoppel principles do not apply.[6]

Notwithstanding the fact that res judicata and collateral estoppel are inapplicable

---

**5.** Although the issue of whether the *Rooker–Feldman* doctrine precludes federal review of state interlocutory orders has not been definitively resolved by the Circuits, the greater weight of authority seems to hold that the doctrine should bar review of final and nonfinal orders alike. *See Doctor's,* 107 F.3d at 137 (*Rooker–Feldman* is broader than preclu-

sion doctrines because it does not depend on final judgment); *Goetzman v. Agribank, FCB,* 91 F.3d 1173, 1177 (8th Cir.1996); *Charchenko,* 47 F.3d at 983 (doctrine not dependent on final judgment).

**6.** *See Jet Charter Service, Inc. v. Koeck,* 907 F.2d 1110, 1112, n. 2 (11th Cir.1990) (dis-

for lack of final judgment, this Court concludes that the action against Defendants Beach and J & L is barred by the *Rooker–Feldman* doctrine which does not depend on the existence of a final judgment. Although Plaintiffs do not frame their federal action as an appeal of the state court's decision, by asking this Court to conclude that personal jurisdiction exists over Defendants Beach and J & L, Plaintiffs are, in essence, asking this court to determine that the state court's jurisdictional ruling was wrong. *See Feldman*, 460 U.S. at 482 n. 16, 103 S.Ct. 1303 (relevant inquiry is whether district court is "in essence being called upon to review state court decision"); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (J. Marshall concurring) ("[w]here federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state court judgment.") The timing of the state court ruling and the filing of the federal action also bolsters the Court's conclusion that Plaintiffs' federal action against Defendants Beach and J & L is in the nature of an appeal. *See Doctor's*, 107 F.3d at 138 (when federal action is filed after adverse state action, it is more likely to be an appeal). Plaintiffs waited to file the federal suit until after the state court dismissed claims against two of the defendants.

Plaintiffs maintain that *Rooker–Feldman* was not intended to cover the situation in the instant case where a party merely files suit in federal court after a state court issued an interlocutory order dismissing for want of personal jurisdiction. Plaintiffs argue that they were not appealing the state court's decision, seeking an order from the federal court invalidating the state court's decision, or requesting any type of relief that *Rooker–Feldman* was designed to prevent. Rather, they were simply seeking to prosecute their claims against Defendants in a forum that would provide jurisdiction over all defendants.[7]

Admittedly, the instant case does not fall within the typical *Rooker–Feldman* framework in that Plaintiffs have not directly challenged the state court's ruling or asked this court to direct the state court to do something. Nevertheless, the Court believes that the principles behind *Rooker–Feldman* prevent the Court from hearing claims against Defendants Beach and J & L. Although the doctrine has not previously been applied in this specific context, the spirit of the doctrine is to prevent federal courts from interfering with state court rulings. The doctrine reflects the important respect and understanding that goes to the very heart of federalism-the dual dignity of state and federal courts in interpreting the law. *See Powell*, 80 F.3d at 467.[8] Plaintiffs are free to appeal the

missal for lack of personal jurisdiction against one defendant is an interlocutory order when the case remains pending as to other defendants).

7. Plaintiffs cite the Eleventh Circuit's decision in *Lops* for the proposition that a federal district court is not bound by a state court's interlocutory ruling that personal jurisdiction does not exist over a particular defendant and that a federal district court must decide for itself whether it has personal jurisdiction. *See Lops*, 140 F.3d at 937–38. In *Lops*, the Eleventh Circuit held that a state court's interlocutory transfer order based on a finding of lack of personal jurisdiction was not entitled to collateral estoppel or res judicata effect because it was not a final order under Georgia law. Accordingly, the Eleventh Circuit concluded that it was appropriate for the

district court to make its own personal jurisdiction determination. Nevertheless, *Lops* is inapposite to the instant action. First, *Lops* did not address the *Rooker–Feldman* doctrine at all. Second, *Lops* does not even stand for the proposition that district courts can make their own personal jurisdiction determination despite a state court's interlocutory order of dismissal on personal jurisdiction grounds. *Lops* did not involve a interlocutory order actually dismissing a case for lack of personal jurisdiction. Rather, the order involved merely transferred the case pursuant to a stipulation by the parties that transfer rather than dismissal was appropriate.

8. Allowing lower federal courts to review the judgments of state courts is intrusive and likely to breed antagonism. *See Texaco*, 784 F.2d

state court's adverse jurisdictional ruling through the Florida appellate system and all the way to the U.S. Supreme Court. They are not, however, free to appeal to this Court.

Nevertheless, Plaintiffs allege that the instant case fits within an exception to the *Rooker–Feldman* doctrine where a party did not have a reasonable opportunity to raise their claim in state court. *See Powell,* 80 F.3d at 467 (doctrine inapplicable if party denied opportunity to litigate claim in state court). Plaintiffs contend that the state court did not give them a fair opportunity to litigate the personal jurisdiction issue. This Court disagrees. Plaintiffs submitted a written response opposing the motion to dismiss for lack of personal jurisdiction. In addition, the state court held a hearing on the issue where Plaintiffs' counsel was permitted to present arguments. The Court does not find persuasive Plaintiffs' arguments that they were denied the right to obtain jurisdictional discovery. Plaintiffs' failure to obtain jurisdictional discovery in the state case resulted more from Plaintiffs own inaction than it did the trial court's denial of their "right" to seek discovery.

Plaintiffs did not serve or propound any discovery requests.[9] The only allusion to a jurisdictional discovery request prior to the state court's decision on the issue was in Plaintiffs' opposition to the motion to dismiss filed more than four and a half months before the state judge ultimately ruled on personal jurisdiction. The state court, therefore, did not so much deny discovery as it dismissed the case before discovery was taken.[10] *See Posner,* 178 F.3d at 1214 (no error to deny discovery when Plaintiffs never served discovery requests and only raised the issue of jurisdictional discovery in its opposition to motion to dismiss filed months before).

Accordingly, for all of the foregoing reasons, Plaintiffs' action is dismissed as to Defendants Beach and J & L for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.[11]

## B. Dismissal for Lack of Personal Jurisdiction

Assuming arguendo that the Court had determined that *Rooker–Feldman* did not preclude this Court from exercising subject matter jurisdiction over Plaintiffs' claims against Defendants Beach and J & L, this Court would have little trouble in dismissing the action against those two defendants for lack of personal jurisdiction. The Court is required to analyze personal jurisdiction under the Florida

---

at 1142–43. Such a result is particularly true in the instant case where this Court is asked to reach a jurisdictional ruling under the Florida long-arm statute at odds with a Florida court's ruling in an identical action under the same statute. *See Sculptchair, Inc. v. Century Arts., Ltd.,* 94 F.3d 623 (11th Cir. 1996) (because extent of Florida long-arm statute is governed by Florida law, federal courts are bound to adhere to decisions of Florida intermediate courts in interpreting the statute).

9. Although precedent from the Eleventh Circuit and Florida courts support a qualified right to conduct jurisdictional discovery, those cases are distinguishable. *See Eaton v. Dorchester Dev., Inc.,* 692 F.2d 727, 729–31 (11th Cir.1982); *Gleneagle Ship Management Co. v. Leondakos,* 602 So.2d 1282, 1284 (Fla. 1992). In each of the cases cited above, the plaintiffs actually served interrogatories or production requests before the motion to dis-

miss was ruled on. *See Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir.1999).

10. The state judge specifically stated at the hearing on the motion to dismiss for lack of personal jurisdiction that Plaintiffs had plenty of time to get discovery and failed to do so. *See* Transcript at 15 (Jan. 14, 1999) (Ex. F to Brief in Support of Motion to Dismiss for Lack of Subject Matter Jurisdiction and in Support of Motion to Abstain).

11. Arguably, the Court is precluded by *Rooker–Feldman* from exercising subject matter jurisdiction over claims against all of the defendants because the entire federal action can be characterized as an appeal as opposed to just the claims against the two defendants dismissed by the state court. Nevertheless, the Court considers it more appropriate to address claims as to the remaining defendants under abstention principles.

long-arm statute just as the state court did. The record reflects ample evidence that the Florida state court was correct in concluding Plaintiffs' complaint did not set forth a basis for personal jurisdiction as to those two defendants.

No injury or tortious act is alleged to have occurred in Florida. Defendants Beach and J & L are North Carolina residents who have provided affidavits demonstrating that neither has resided, transacted business, owned or leased property, maintained an office, or paid taxes in this state. Furthermore, the affidavits provide that neither Defendant has solicited or advertised for business in Florida. Their contacts with the state appear to be limited to periodically docking the M/Y Miramar in Florida ports while en route to other destinations or due to bad weather or necessary repairs. In addition, some of the crew members who worked on the M/Y Miramar were Florida residents and were hired through a Florida company.

Plaintiff has not submitted any affidavits, testimony, or depositions that demonstrate personal jurisdiction is proper. *See Sculptchair,* 94 F.3d at 626 (when defendant raises through affidavits, documents, or other testimony a meritorious challenge to personal jurisdiction, the burden shifts to plaintiff to prove jurisdiction by affidavits, testimony, etc). Accordingly, were the Court required to reach the issue, dismissal of the action against Defendants Beach and J & L would be appropriate for lack of personal jurisdiction.

### C. Abstention

Finally, Defendants argue that this Court should decline to exercise subject matter jurisdiction over this case and should defer to the pending Florida state court proceeding in light of settled principles of abstention. The Supreme Court has recognized that in a few exceptional cases, a federal court may stay its proceed-

ings in deference to pending state proceedings. *See Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15–19, 103 S.Ct. 927, 936–39, 74 L.Ed.2d 765 (1983). The doctrine, known as *Colorado River* abstention,[12] rests on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation. *See id.* at 15–19, 103 S.Ct. at 936–39; *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention from the exercise of federal jurisdiction, however, is the exception and not the rule. *See Metropolitan Life v. Lockette,* 155 F.3d 1339, 1341 (11th Cir.1998). A federal court's abdication of its obligation to decide a case can be justified under *Colorado River* abstention only in exceptional circumstances where ordering the parties to repair to state courts serves important countervailing interests. *See id.*

■ To determine whether exceptional circumstances exist such that a federal court may decline to exercise jurisdiction requires analysis of the following factors: (1) whether one of the courts has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the potential for piecemeal litigation; (4) the order in which the forums obtain jurisdiction; (5) whether federal or state law will be applied; and (6) the adequacy of each forum to protect the parties' rights. *See Moses Cone,* 460 U.S. at 15–16, 23–27, 103 S.Ct. at 936–37, 941–43. This list of factors, however, is not exhaustive.

The Supreme Court has also indicated that district courts should consider "the vexatious or reactive nature of either the federal or the state litigation" in determining whether to abstain under *Colorado River. See id.* at 18, 103 S.Ct. at 938. *See also Telesco v. Telesco Fuel and Masons' Materials, Inc.,* 765 F.2d 356, 363 (2d Cir.

12. Although frequently called abstention, the *Colorado River* doctrine is not really a recognized form of abstention. *See Lops,* 140 F.3d at 960 (J. Kravitch, dissenting). Unlike traditional abstention doctrines that rest on regard for federal-state relations and considerations of proper constitutional adjudication, *Colorado River* "abstention" is based more on judicial administration and economy.

1985). Abstaining when litigation is reactive or vexatious furthers the important federal policy of prohibiting forum shopping. *See Allied Machinery Serv. Inc. v. Caterpillar, Inc.*, 841 F.Supp. 406, 410 (S.D.Fla.1993).

In applying the *Colorado River* abstention factors described above, it is important to note that each consideration should be applied in a "pragmatic, flexible manner with a view to the realities at hand." *Moses Cone*, 460 U.S. at 21, 103 S.Ct. 927. The decision whether to stay or dismiss in favor of concurrent state court litigation does not rest on a mechanical checklist of factors, but on a careful balancing of the factors as they apply in a given case. Weight given to any one factor may vary greatly from case to case. *See id.* at 16, 103 S.Ct. 927.

■ In turning now to address the factors as they apply in the instant case, the court notes as a preliminary matter that the present federal action and the Florida state court action are clearly parallel proceedings. In fact, with the dismissal of Plaintiffs' claims against Defendants Beach and J & L, this action involves the exact same defendants and claims as the state action.[13]

Next, the parties and the Court agree that the first two *Colorado River* factors have no bearing on the abstention analysis in the instant case. Neither the state court or this Court have assumed jurisdiction over the res at issue, and the inconvenience of the forum factor is irrelevant since the state and federal forum are located in the same city. The remaining *Colorado River* factors are more helpful in determining whether abstention is appropriate in the instant case.

13. In any event, exact parallelism is not required. It is sufficient if the two proceedings are "substantially similar." *See Telesco*, 765 F.2d at 362.

14. Furthermore, because Plaintiffs' federal and state actions are identical, an earlier decision in one court will likely bind the parties in the other under preclusion principles. This raises two problems. First, a party may

## Avoiding Piecemeal Litigation

■ The third factor—avoiding piecemeal litigation—weighs strongly in favor of deferring to the state court proceedings. Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results. *See LaDuke v. Burlington Northern Railroad Co.*, 879 F.2d 1556 (7th Cir.1989) (*citing American Intern. Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir.1988)). The facts and claims underlying the state and federal actions in the instant case are identical. Plaintiffs' state and federal actions involve wrongful death claims under 46 U.S.C.App. § 761, the "Death on the High Seas Act." Thus, if this Court declines to abstain, there exists a strong likelihood that it will duplicate the efforts of the state court, potentially reaching a different conclusion on identical facts.[14] *See Allied Machinery*, 841 F.Supp. at 408 (abstention would avoid duplicative efforts and potentially inconsistent conclusions).

Plaintiffs argue that for this factor to be applicable, the state court must present a comprehensive and unified proceeding that will reach all of Plaintiffs' claims. *See Colorado River*, 424 U.S. at 819, 96 S.Ct. 1236. Plaintiffs argue that the state court proceeding is less comprehensive than the federal one because Plaintiffs cannot proceed against Defendants Beach and J & L in state court, and the state court lacks the advantages that federal multi-district litigation procedures provide. The Court finds both of these arguments unpersuasive.

First, the Court has already determined that Plaintiffs cannot proceed against De-

try to accelerate or stall proceedings in one of the forums to ensure the more "favorable forum" rules first on an issue. *See LaDuke*, 879 F.2d at 1560. Second, the possibility exists that either forum will enter a ruling unaware that the other forum already ruled. In such a case, the forum that loses the race will have engaged in an "unseemly and grand waste of efforts." *See id.*

fendants Beach and J & L in the federal action. Accordingly, Plaintiffs' suits in federal and state courts involve the exact same defendants and neither forum would provide more complete relief than the other. Second, Plaintiffs' argument that multi-district litigation procedures available in federal court will actually help avoid piecemeal litigation must also fail. Plaintiffs' request to consolidate their pending federal North Carolina actions with the action currently pending before this Court was denied by the Judicial Panel on Multidistrict Litigation on October 5, 1999. The Panel concluded that the minimal number of actions involved and the overall level of complexity and discovery needs in the cases were not sufficient to warrant consolidation under multi-district litigation procedures. Accordingly, taking jurisdiction in this case where an identical action is already underway in state court will further piecemeal litigation, not avoid, it as Plaintiffs contends.[15]

### Order in Which Jurisdiction Was Obtained

The fourth factor—the order in which jurisdiction was obtained—also tilts the balance somewhat in favor of this Court deferring to the concurrent state court proceeding. This factor should not be measured exclusively by which action was filed first, but rather in terms of how much progress has been made in the two actions. See Moses Cone, 460 U.S. at 21, 103 S.Ct. 927. Plaintiffs' state court proceeding has been pending for almost a year longer than the federal action. Discovery has commenced in the state court and that court has already addressed jurisdictional motions to dismiss. In contrast, no orders have been issued in the federal action and no discovery has taken place.

### What Law Applies

Plaintiffs' claims are pursuant to the Death on the High Seas Act. The involvement of federal law ordinarily weighs heavily in favor of the federal court exercising jurisdiction. See Moses Cone, 460 U.S. at 26, 103 S.Ct. 927. However, if federal and state courts have concurrent jurisdiction over a claim, this applicable law factor becomes less significant. See id. at 25, 103 S.Ct. 927. State and federal courts have concurrent jurisdiction to hear wrongful death claims under the Death on the High Seas Act. See Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (state courts have concurrent jurisdiction to hear claims arising under the Death on the High Seas Act). Because state and federal courts have concurrent jurisdiction over Plaintiffs' claims, this factor does not weigh heavily in favor of exercising jurisdiction or abstention.

### Adequacy of Each Forum to Protect Plaintiffs' Rights

■ If the federal court doubts the adequacy of the state court to resolve a plaintiff's claims against a defendant, it would be an abuse of discretion for the Court to dismiss or stay the federal action under Colorado River. See Moses Cone, 460 U.S. at 28, 103 S.Ct. 927. Again, Plaintiffs argue unsuccessfully that the state court is an inadequate forum because it will not hear claims against Defendants Beach and J & L and because it lacks multi-district litigation procedures. As previously discussed, this Court also dismissed claims as to Defendants Beach and J & L, and the Panel on Multi–District Litigation rejected Plaintiffs' requests to consolidate their pending federal actions. Thus, Plaintiffs have provided this Court no reason to believe the state court will not fully and fairly adjudicate their claims, nor have they shown that this Court can somehow afford them more complete relief.

---

15. Plaintiffs also have an identical wrongful death case pending in a North Carolina federal court against the Defendants dismissed from the Florida proceedings. The piecemeal litigation that will inevitably result from the Florida state court proceeding and the North Carolina proceeding will only be compounded if this Court also exercises jurisdiction. There would be three courts resolving identical underlying disputes.

With respect to the Florida court's ability to decide Plaintiffs' claims arising under federal law, the Court previously stated that state courts have concurrent jurisdiction to hear claims pursuant to the Death on the High Seas Act. The Florida court is required to apply the same law as would be applied by this Court, and there is no reason to believe that the state court cannot adequately resolve Plaintiffs' dispute. More importantly, Plaintiffs themselves apparently believed that the state forum would sufficiently protect their interest since they initially filed suit there instead of in federal court. *See Allied Machinery,* 841 F.Supp. at 410; *Lorentzen v. Levolor Corp.,* 754 F.Supp. 987 (S.D.N.Y.1990) (fact forum was plaintiff's initial choice is relevant in deciding whether that forum is adequate).

### Reactive and Vexatious Litigation/Forum Shopping

This last factor weighs significantly in the Court's analysis of whether the Court should defer to the Florida state court proceeding under *Colorado River* abstention. The Supreme Court has stated that "the vexatious or reactive nature of either the federal or the state litigation" is an important consideration in deciding whether to defer to a parallel proceeding under *Colorado River. See Moses Cone,* 460 U.S. at 18, 103 S.Ct. at 938.

Indeed, the First, Second, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits have all stated explicitly that the "reactive" character of a federal suit weighs favor of abstaining. *See Lops,* 140 F.3d at 964 (J. Kravitch, dissenting); *Allen v. La. State Bd. of Dentistry,* 835 F.2d 100, 105 (5th Cir.1988) (affirming district court's stay where sequence of events indicates federal suit was vexatious or reactive); *Nakash v. Marciano,* 882 F.2d 1411, 1417 (9th Cir.1989) (affirming district court's abstention because federal suit was attempt to avoid adverse ruling in state court); *Fuller Co. v. Ramon I. Gil, Inc.,* 782 F.2d 306, 309–10 (1st Cir.1986); *Teles-*

*co,* 765 F.2d at 363 (refiling same suit in federal court after adverse decision in state court suggests reactive and vexatious nature of second suit); *Allied Machinery,* 841 F.Supp. at 408; *Redner v. City of Tampa,* 723 F.Supp. 1448 (M.D.Fla.1989) (look at chronology of cases to determine whether federal suit is reactive)

When reviewing the chronology of the case history between these Plaintiffs and Defendants, it is difficult to conceive of the instant case as anything other than forum shopping and "reactive litigation." Plaintiffs first filed suit against Defendants in a North Carolina federal court, where Plaintiffs failed to obtain personal jurisdiction over all of the Defendants. Plaintiffs also filed an identical cause of action against the same Defendants in a Florida state court, where Plaintiffs received a similar adverse jurisdictional ruling. After receiving the second adverse jurisdictional ruling from the Florida court, Plaintiffs tried yet again to find a more favorable forum by filing the same action in this Court.

Plaintiffs clearly could have filed suit in this Court instead of the Florida state court. Yet, Plaintiffs voluntarily chose the state forum as their first choice and only sought to come to this forum after an adverse ruling by the state court. Plaintiffs should normally be required to select one forum and stay there. *See Lops,* 140 F.3d at 944. The fact that Plaintiffs had access to federal court, but chose to proceed in state court initially, weighs in favor of abstention. *See Allied Machinery,* 841 F.Supp. at 408. While a federal court has a "virtually unflagging obligation" to exercise jurisdiction over cases properly presented before it, this obligation becomes less compelling when an action is presented to that Court in an attempt to avoid adverse or unfavorable rulings dealt by other jurisdictions. Accordingly, this factor weighs in favor of this Court deferring to the state court litigation.

For all of the foregoing reasons, the Court concludes that exceptional circumstances exist to warrant abstention under the *Colorado River* doctrine. Rather than

dismiss the action, however, the Court deems it appropriate to stay the federal proceedings in deference to the pending state action. *See Palmer v. Jackson,* 617 F.2d 424 (5th Cir.1980) (stay rather than dismissal is appropriate under *Colorado River* abstention). The Court will retain jurisdiction over the matter pending the resolution of the state action. Therefore, it is

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is GRANTED as to Defendants Beach and J & L. Defendants' Motion to Dismiss Plaintiffs' claims against Defendants Beach and J & L for Lack of Personal Jurisdiction is MOOT.

**FURTHER ORDERED AND ADJUDGED** that Defendants' Motion to Abstain is GRANTED as to Plaintiffs' claims against Defendants Bussey, Safe Divers, Mr. Sinnamon, and Ms. Sinnamon. Plaintiffs' federal action against these four Defendants is STAYED pending the resolution of the concurrent state court proceeding. The Parties shall file a status report with this Court every three months to advise the Court of the status of the state court proceeding.