96 Cal.Rptr.2d 666 (2000)
81 Cal.App.4th 503
Joseph NAEGELE, as Co-Trustee, etc., et al., Plaintiffs and Appellants,
v.
R.J. REYNOLDS TOBACCO COMPANY et al., Defendants and Respondents.
Richard Donaldson, Plaintiff and Appellant,
v.
R.J. Reynolds Tobacco Company et al., Defendants and Respondents.
Nos. A084367, A084371.
Court of Appeal, First District, Division One.
June 9, 2000.
As Modified on Denial of Rehearing July 7, 2000.
Review Granted October 18, 2000.
*668 Harry F. Wartnick, Madelyn J. Chaber, Phillip Scott Chan, Wartnick, Chaber, Harowitz, Smith & Tigerman, San Francisco, for Appellants.
H. Joseph Escher III, Richard Shively, Anne-Marie Eileraas, Howard, Rice, Nemerovski, Canady, Falk & Rabkin, San Francisco, for Respondents.
*667 STRANKMAN, P.J.
For a decade, Civil Code former section 1714.45 gave tobacco manufacturers and sellers almost complete immunity from tort actions based on injuries or death resulting from use of their products.[1] (Stats. 1987, ch. 1498.) A dramatic policy change occurred effective January 1, 1998, when the Legislature amended the statute to eliminate the immunity of manufacturers. (Stats.1997, ch. 570, § 1.) The principal question in these consolidated appeals is whether the amended statute allows individuals who were diagnosed *669 with lung cancer before its effective date to maintain tort actions against tobacco manufacturers. We conclude that the amended statute is not retroactive and that former section 1714.45 bars the actions.

BACKGROUND
In January 1998, Albert J. Pavolini filed a complaint against multiple defendants, including respondents R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company), and Lorillard Tobacco Company, seeking damages for personal injuries caused by cigarettes and asbestos (San Francisco Super. Ct. No. 992223). As later amended, the complaint sought compensatory and punitive damages from respondents under theories of negligence, strict liability, false representations, deceit and fraudulent concealment, and civil conspiracy. The same month, Edwin Brigham filed a similar complaint, except that respondent Lorillard was not among the defendants (San Francisco Super. Ct. No. 992230).
Respondents demurred to both complaints on several grounds, including that the causes of action were barred by former section 1714.45 and that the amended statute did not apply retroactively. The demurrers were sustained with leave to amend in various respects, including pleading injury before January 1, 1988, and after January 1,1998.[2]
Each plaintiff filed an amended complaint, alleging that at some unknown time before January 1, 1988, the DNA in at least one cell in his lungs was irrevocably injured by smoking and that the injured cell replicated and eventually developed into lung cancer. Each also alleged that his lung cancer was an injury that continued after January 1, 1998. The parties then stipulated to orders severing respondents, termed the "tobacco defendants," from the "asbestos defendants" for separate trial.
Respondents again demurred, arguing that plaintiffs had not alleged and could not allege a cause of action accruing either before January 1, 1988, or after January 1, 1998. In support of the demurrers, respondents asked the court to take judicial notice of answers to interrogatories establishing that Brigham was diagnosed with lung cancer in October 1996 and Pavolini was diagnosed with lung cancer in May 1997. The trial court sustained the demurrers without leave to amend and ordered entry of judgments dismissing both actions as to respondents. Both plaintiffs appealed. We have consolidated the appeals for purposes of briefing, argument, and decision.[3]

DISCUSSION

A. Introduction

It is generally understood that former section 1714.45 was enacted as part of a hasty compromise between sharply divergent interests seeking and opposing comprehensive changes in California tort law. (See Richards v. Owens-Illinois, Inc. (1997) 14 Cal.4th 985, 998-999, 60 Cal. Rptr.2d 103, 928 P.2d 1181 (Richards); American Tobacco Co. v. Superior Court (1989) 208 Cal.App.3d 480, 486-87 & fn. 3, 255 Cal.Rptr. 280 (American Tobacco).) As originally enacted, the statute read as follows:
"(a) In a product liability action, a manufacturer or seller shall not be liable if:
"(1) The product is inherently unsafe and the product is known to be unsafe *670 by the ordinary consumer who consumes the product with the ordinary knowledge common to the community; and
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, tobacco, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
"(b) For purposes of this section, the term `product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(c) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp. (1972), 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988." (Stats.1987, ch. 1498, § 3, pp. 5778-5779.)
In American Tobacco, supra, 208 Cal. App.3d 480, 255 Cal.Rptr. 280, Division Two of this court held that former section 1714.45 barred actions by several plaintiffs for damages due to injuries or death allegedly resulting from use of tobacco products. The court described the statute as poorly drafted, amenable to diametrically opposed interpretations, and if read literally, internally inconsistent. (American Tobacco, supra, at pp. 485, 489, 255 Cal.Rptr. 280.) Nevertheless, the court concluded from the limited legislative history available that the statute was intended to provide automatic and nearly complete immunity for the manufacturers of the named products, including tobacco. (Id. at pp. 486-487, 255 Cal.Rptr. 280.) Rejecting a claim that consumers cannot fully appreciate the risks involved in smoking because manufacturers do not reveal all the additives in cigarettes, the court explained, "[T]o be covered by this statute it is sufficient that the ordinary consumer knows the product is `unsafe.'" (Id. at pp. 489-490, fn. 5, 255 Cal.Rptr. 280.)
Subsequently, in Richards, supra, 14 Cal.4th 985, 60 Cal.Rptr.2d 103, 928 P.2d 1181, the Supreme Court held that to the extent former section 1714.45 afforded tobacco suppliers immunity from tort liability in direct actions against them, on grounds the immunized conduct did not breach a duty or constitute a tort, the statute also precluded indirect assignment of comparative fault to such entities for purposes of Proposition 51.[4] (Richards, supra, at p. 1001, 60 Cal.Rptr.2d 103, 928 P.2d 1181.) Although the court found it unnecessary to determine the exact substantive scope of that immunity, it emphasized that under the conditions described by the statute, "a tobacco supplier simply commits no tort against knowing and voluntary smokers by making cigarettes available for their use." (Id. at pp. 1000, 1003 & fn. 8, 60 Cal.Rptr.2d 103, 928 P.2d 1181.)
A decade after section 1714.45 was enacted, a dramatic turnabout occurred in this state as to the tort liability of tobacco manufacturers and sellers. As amended effective January 1, 1998, that statute no longer includes tobacco on its list of "inherently unsafe" consumer products that are immune from liability, and it states specifically that it does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions. (Stats.1997, ch. 570, § 1.)[5]

*671 B. The Allegations of Fraud

Initially, appellants argue that it is unnecessary to determine whether amended section 1714.45 is retroactive because neither version of the statute has any bearing on a cause of action for fraud. They argue that California law distinguishes between claims based on a defect in a product and those based on fraudulent conduct, and that the latter have never been within the scope of the statute.
Settled principles of statutory construction govern our analysis. We must ascertain the intent of the Legislature so as to effectuate the purpose of the law, bearing in mind the judiciary's limited role in interpreting enactments of the political branch of government. Our task is to interpret laws, not to write them. We must follow the Legislature's intent, as exhibited by the plain meaning of the words of its statutes, regardless of what we may think of the wisdom, expediency, or policy of its acts. We have no power to rewrite a statute to make it conform to a presumed intention that is not expressed. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 632-633, 59 Cal.Rptr.2d 671, 927 P.2d 1175.)
To determine legislative intent, we first must scrutinize the actual words of a statute. (People v. Valladoli (1996) 13 Cal.4th 590, 597, 54 Cal.Rptr.2d 695, 918 P.2d 999.) Courts ordinarily give statutory language either its usual, everyday meaning (Alexander v. Superior Court (1993) 5 Cal.4th 1218, 1225, 23 Cal.Rptr.2d *672 397, 859 P.2d 96) or its specific legal meaning, if any (Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 19, 56 Cal.Rptr.2d 706, 923 P.2d 1). But when a statute explicitly prescribes the meaning of one of its terms, that definition is generally binding on courts. (Urban Renewal Agency v. California Coastal Zone Conservation Com. (1975) 15 Cal.3d 577, 584-585, 125 Cal. Rptr. 485, 542 P.2d 645; Great Lakes Properties, Inc. v. City of El Segundo (1977) 19 Cal.3d 152, 157, 137 Cal.Rptr. 154, 561 P.2d 244.) Furthermore, the maxim expressio unius est exclusio alterius is pertinent here. If the Legislature has listed specific exemptions in a statute, a court may not imply additional exemptions unless there appears clear legislative intent to the contrary. (Sierra Club v. State Bd. of Forestry (1994) 7 Cal.4th 1215, 1230, 32 Cal.Rptr.2d 19, 876 P.2d 505.)
The common law differences between tort actions based on strict liability for defective products and those based on fraud are of no consequence in interpreting section 1714.45, because the Legislature supplied its own expansive definition of the "product liability" actions to which the statute applies, namely, "any action for injury or death caused by a product." The Legislature has also specified only two exemptions from that broad definition, actions "based on a manufacturing defect or breach of an express warranty." (§ 1714.45, former subd. (b), now subd. (c).) The Legislature's plain language compels the conclusion that whether based on allegations or theories of fraud, negligence, or manufacture of an inherently unsafe product, an action in which a plaintiff seeks damages for personal injury or death caused by a tobacco product clearly is a "product liability" action within the meaning of the statute. Nothing in the abbreviated available legislative history of the statute as summarized in American Tobacco, supra, 208 Cal.App.3d at pages 486-488 and footnote 3, 255 Cal.Rptr. 280, suggests any basis for implying exceptions in addition to those enumerated.[6]

C. The Allegations of Injury Occurring Before January 1, 1988

Generally speaking, a cause of action accrues when, under substantive law, the wrongful act is done or the wrongful result occurs and the consequent liability arises. (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79.) Stated another way, a cause of action does not accrue until the party "owning it" is entitled to sue, that is, when the last element essential to the cause of action occurs. (Spear v. California State Auto. Assn. (1992) 2 Cal.4th 1035, 1040, 9 Cal.Rptr.2d 381, 831 P.2d 821; see 3 Witkin, Cal Procedure (1996) § 459, pp. 580-581.) Harm or injury to the plaintiff is an essential element of a ripe cause of action in negligence or strict liability. Furthermore, to be actionable, that harm must be something more than speculative or the unrealized threat of future harm. (Buttram v. Owens-Corning Fiberglas Corp. (1997) 16 Cal.4th 520, 531, fn. 4, 66 Cal. Rptr.2d 438, 941 P.2d 71. (Buttram).)
When a single, sudden act allegedly results in an immediately evident traumatic injury, there is no question about the accrual date of the injured party's cause of action. But determining the accrual date of a cause of action for a latent, progressively developing disease allegedly caused by exposure to a toxic substance is far more difficult, because "`[n]o temporally discrete event exists that encompasses the *673 defendant's breach and the plaintiffs injury.' " (Buttram, supra, 16 Cal.4th at p. 529, 66 Cal.Rptr.2d 438, 941 P.2d 71.) For statute of limitations purposes, a cause of action for latent injury ordinarily accrues when "the plaintiff discovers or reasonably should have discovered that he has suffered a compensable injury." (Id. at pp. 529-530, 66 Cal.Rptr.2d 438, 941 P.2d 71; see Hamilton v. Asbestos Corp. (2000) 22 Cal.4th 1127, 1144-1145, 95 Cal.Rptr.2d 701, 998 P.2d 403 [statutory exception to general rule in asbestos cases].)
It is undisputed that appellants learned of their injuries no later than 1996 and 1997, when they were diagnosed with lung cancer. At the time, former section 1714.45 was in effect. Nevertheless, appellants insist their causes of action accrued before the enactment of that statute because they alleged cell injury that predated its effective date.
First, the argument assumes incorrectly that former section 1714.45 did not preclude actions based on smoking-related injuries that occurred before its effective date. Former subdivision (c) stated that the section applied to "all product liability actions pending on, or commenced after, January 1, 1988." (Stats. 1987, ch. 1498, § 3.) It is apparent that any action pending on that date necessarily would have been based on injuries and conduct occurring before that date. Case law supports this conclusion about the retroactive reach of the former statute, as least by implication. (See American Tobacco, supra, 208 Cal.App.3d at p. 490, fn. 6, 255 Cal.Rptr. 280 [refusing to consider plaintiffs' belated constitutional challenge to the "retroactive provisions" of the statute because the issue was first raised in a petition for rehearing]; Richards, supra, 14 Cal.4th at p. 990, 60 Cal.Rptr.2d 103, 928 P.2d 1181 [applying the statute in lawsuit by plaintiff who had smoked from 1941 to 1984].)
The argument also fails for another reason. Even if we were to conclude that former section 1714.45 did not or could not preclude a cause of action that accrued before its effective date, appellants' allegations of undetected cellular injury are not sufficient to state such a claim.
The Supreme Court recently considered a similar argument regarding the accrual of a cause of action in Buttram, supra, 16 Cal.4th 520, 66 Cal.Rptr.2d 438, 941 P.2d 71. Buttram followed Evangelatos v. Superior Court, supra, 44 Cal.3d 1188, 246 Cal.Rptr. 629, 753 P.2d 585, in which the court held that Proposition 51 was prospective and applicable only to causes of action that "accrued" on or after its effective date. (Evangelatos, supra, at p. 1193 1194, 246 Cal.Rptr. 629, 753 P.2d 585.) Subsequently, in Buttram, the court held that for the specific and limited purpose of determining whether Proposition 51 applies, a cause of action for damages resulting from a latent disease, such as the asbestos-related disease mesothelioma, accrues when the plaintiff is diagnosed with the disease or otherwise discovered his asbestos-related illness or injuries. (Buttram, supra, at pp. 525, 540, 66 Cal. Rptr.2d 438, 941 P.2d 71.)
The court rejected the plaintiffs argument that accrual for this purpose should be determined by looking to the undetected development of the first cancer cells, proved in retrospect by medical testimony to have existed at a certain time. The court reasoned in part that application of that hindsight test, which has been utilized in the context of third party liability insurance to determine the "trigger of coverage" for asbestos-related disease, would thwart rather than effectuate the purpose of the tort reform measures adopted through the passage of Proposition 51. (Buttram, supra, 16 Cal.4th at p. 538, 66 Cal.Rptr.2d 438, 941 P.2d 71.) Given the decades-long latency periods of that disease, as a practical matter use of that test would make the now disfavored joint and several liability applicable far into the future. (Id. at pp. 539-540, 66 Cal.Rptr.2d *674 438, 941 P.2d 71.) The same reasoning pertains here. Adoption of a rule that looked to subclinical changes in cell structure for purposes of determining whether an action accrued before the effective date of former section 1714.45 would drastically undermine the immunity it provided, thereby frustrating rather than fostering the legislative purpose underlying its enactment.[7]

D. Retroactivity of Amended Section 1714.45

Next, we consider appellants' arguments that their actions are permitted by amended section 1714.45 despite the diagnoses of their illnesses before its effective date. First, they insist that the amended statute does not operate retrospectively and instead simply clarifies existing law. Alternatively, they argue that if the amended statute did change the law, that change is retroactive.
Again, established principles guide our analysis. A statute has retroactive or retrospective effect if it substantially changes the legal effect of past events. (Kizer v. Hanna (1989) 48 Cal.3d 1, 7, 255 Cal.Rptr. 412, 767 P.2d 679.) A retrospective law is one that affects rights, obligations, acts, transactions, or conditions that were performed or existed before its adoption. (Aetna Cos. & Surety Co. v. Ind. Acc. Com. (1947) 30 Cal.2d 388, 391, 182 P.2d 159.) In the tort context, "[t]he application of a tort reform statute to a cause of action which arose prior to the effective date of the statute but which is tried after the statute's effective date would constitute a retroactive application of the statute. [Citations.]" (Evangelatos v. Superior Court, supra, 44 Cal.3d at p. 1206, 246 Cal.Rptr. 629, 753 P.2d 585.) To be more specific, when an absolute or substantial defense existed at the time a plaintiffs injury occurred, the application of a subsequent amendment cutting off that defense in the plaintiff's action for damages gives the amendment retroactive effect. (See Morris v. Pacific Electric Ry. Co. (1935) 2 Cal.2d 764, 767-769, 43 P.2d 276.)
California has long adhered to the basic rule that statutes operate prospectively unless the Legislature has clearly indicated it intended retroactive or retrospective application. (Western Security Bank v. Superior Court (1997) 15 Cal.4th 232, 243, 62 Cal.Rptr.2d 243, 933 P.2d 507; Evangelatos v. Superior Court, supra, 44 Cal.3d at p. 1207, 246 Cal.Rptr. 629, 753 P.2d 585.) The Civil Code itself includes a specific codification of that general principle, declaring, "No part of [this Code] is retroactive, unless expressly so declared." (§ 3.) That statute reflects "the common understanding that legislative provisions are presumed to operate prospectively, and that they should be so interpreted 'unless express language or clear and unavoidable implication negatives the presumption.' [Citation.]" (Evangelatos, supra, at p. 1208, 246 Cal.Rptr. 629, 753 P.2d 585.) Absent an express retroactivity provision, a statute will not be applied retroactively unless it is clear from extrinsic sources such as legislative history that the Legislature intended that effect. (Id. at pp. 1209-1210, 246 Cal.Rptr. 629, 753 P.2d 585.)
The presumption against retroactivity applies with particular force to laws creating new obligations, imposing new duties, or exacting new penalties because of past transactions. (In re Marriage of Reuling (1994) 23 Cal.App.4th 1428, 1439, 28 Cal.Rptr.2d 726; see Wienholz v. Kaiser Foundation Hospitals (1989) 217 Cal.App.3d 1501, 1505, 267 Cal. Rptr. 1.) A statutory amendment that imposes a new liability and substantially affects existing rights and obligations will be construed to operate prospectively unless *675 legislative intent to the contrary clearly appears. (Aetna Cas. & Surety Co. v. Ind. Acc. Com., supra, 30 Cal.2d at pp. 394-395, 182 P.2d 159; see City of Los Angeles v. Shpegel-Dimsey, Inc. (1988) 198 Cal.App.3d 1009, 1019-1020 & fn. 2, 244 Cal.Rptr. 507.)
A corollary to these rules is that a statute that simply clarifies rather than changes existing law does not operate retroactively even if applied to acts predating its enactment. A legislative clarification of a statute's true meaning has no retrospective effect because the meaning remains the same. (Western Security Bank v. Superior Court, supra, 15 Cal.4th at p. 243, 62 Cal.Rptr.2d 243, 933 P.2d 507; Re-Open Rambla, Inc. v. Board of Supervisors (1995) 39 Cal.App.4th 1499, 1511, 46 Cal.Rptr.2d 822.) While we cannot disregard the Legislature's expressed views on the meaning of a statute, a legislative pronouncement that an unmistakable change in the law is only a clarification is neither binding nor conclusive in construing the statute. "Ultimately, the interpretation of a statute is an exercise of the judicial power the Constitution assigns to the courts." (Western Security Bank, supra, at p. 244, 62 Cal.Rptr.2d 243, 933 P.2d 507.)
Appellants' assertion that amended section 1714.45 does nothing more than clarify what the law has always been requires little discussion. Under the original version, as construed in American Tobacco, supra, 208 Cal.App.3d 480, 255 Cal.Rptr. 280, tobacco manufacturers and sellers enjoyed "nearly complete" and "automatic" immunity from tort liability for injuries caused by their products for 10 years. (Id. at pp. 486-87, 255 Cal.Rptr. 280.) Amended section 1714.45, which eliminates the immunity of manufacturers, substantially and significantly changes the law.
The legislative declaration appearing in the uncodified section of the statute confirms that conclusion. That declaration states, "The Legislature hereby finds and declares that to the extent that the common law rules as to product liability actions with respect to tobacco were superseded by the [former] version of Section 1714.45 ..., this act restores those common law rules with respect to the manufacturer or sale of tobacco products by tobacco manufacturers and their successors in interest." (Stats. 1997, ch. 570, § 2.) It is beyond question that the restoration of rules that were superseded for a decade accomplishes a change in the law, not a clarification.
Appellants then insist that amended section 1714.45 is retroactive and permits actions based on injury or illness diagnosed before its effective date, but neither the text nor the legislative history upon which they rely supports their claim.
Appellants point to subdivision (d) of the amended statute, which states: "This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp. (1972), 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988." (Italics added.) According to appellants, the italicized phrase indicates the Legislature's intent to restore the common law that existed before the statute's initial enactment in 1987.[8] If read in isolation and without reference to the original version of the statute, the phrase might give some credence to appellants' claim. What appellants ignore, however, is that subdivision (d) was not a change in the statute. Instead, it simply reiterates exactly former subdivision (c), a provision that the American Tobacco court concluded could not be *676 read literally without defeating the apparent purpose of former section 1714.45. (American Tobacco, supra, 208 Cal.App.3d at p. 489, 255 Cal.Rptr. 280.) Regardless of what that poorly drafted subdivision communicated about the applicable scope of the former section, its presence in the amended statute cannot reasonably be read as a clear expression that the radical changes made by the amendment were intended to apply retroactively.
Appellants also see a declaration of retroactivity in subdivision (f), which states in relevant part: "It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section ... to declare that there exists no statutory bar to tobacco-related personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that those claims that were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense." (Italics added.)
According to appellants, the disjunctive use of the past and present tenses, "were or are brought," indicates that the amended statute applies to actions brought before or after its effective date, January 1, 1998. Appellants attempt to bolster that reading by reference to the evolution of the bill that resulted in the amended statute, Senate Bill No. 67, which was itself amended several times before its final enactment. As originally introduced, the proposed amendment to section 1714.45 did not include subdivision (f). (Sen. Bill No. 67 (1997-1998 Reg. Sess.) § 1, introduced December 11, 1996.) A comment on the bill prepared for a Senate Judiciary Committee hearing in April 1997 included the following: "Some concern has been expressed that SB 67 would apply only to causes of action arising on or after January 1, 1998, assuming it is enacted this year. In the absence of specific language in the legislation specifying retroactive application, a measure will operate prospectively only upon its enactment." (Sen. Com. on Judiciary, Comment on Sen. Bill No. 67 (1997-1998 Reg. Sess.) p. 3, for hearing on Apr. 8, 1997.) Shortly thereafter, on April 16, Senate Bill No. 67 was amended to add the provision that eventually became subdivision (f), with its reference to actions that "were or are brought." (Sen. Bill No. 67, as amended Apr. 16, 1997.)
Under some circumstances, the Legislature's use of verb tense may be helpful in construing statutes (see Hughes v. Board of Architectural Examiners (1998) 17 Cal.4th 763, 776, 72 Cal.Rptr.2d 624, 952 P.2d 641), but the unexplained shift of verb tense here does not convey the critically important meaning that appellants would have us ascribe to it. The legislative history that appellants cite does not reinforce their reading of the statute; instead, the sequence of events supports the contrary inference. It is beyond question that the Legislature knows how to draft a clear retroactivity provision. (See, e.g., § 1646.5 ["This section applies to contracts ... entered into before, on, or after its effective date; it shall be fully retroactive."].)[9] Nevertheless, after the question of the retroactivity was called to the committee's attention, the Legislature did not add a lucid and unmistakable expression of retroactive intent. Instead, it simply added *677 what ultimately became subdivision (f). The cryptic reference in that subdivision to actions that "were or are brought," not linked to any date or event, cannot plausibly be read to reveal legislative intent on the retrospective reach of this important amendment.
Appellants' reading of the statute also runs afoul of the rule that requires us to read statutes as a whole and give significance, if possible, to all their parts. We must presume that the Legislature intended every phrase and provision to have meaning and to perform a useful function. (Garcia v. McCutchen (1997) 16 Cal.4th 469, 476, 66 Cal.Rptr.2d 319, 940 P.2d 906.) Appellants ignore subdivision (e) of the amended statute, which states that the section does not and never did apply to an action by a public entity to recover the value of benefits provided to persons injured by a tobacco-related illness caused by the tortious conduct of a tobacco company. Subdivision (e) then adds, "In the action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense." If the Legislature had intended to eliminate the immunity of tobacco companies retroactively to causes of action that accrued before the effective date of the amendment, it would have had no reason to mention that the claims of injured individuals might be barred by the earlier version of the statute.
To summarize, we find nothing in the language or the legislative history of amended section 1714.45 to indicate that the Legislature intended retroactive application to causes of action that accrued before its effective date.

E. The Statute of Limitations

Trying yet another tack, appellants contend that to the extent their causes of action were subject to former section 1714.45, the statute of limitations on those causes of action was tolled by Code of Civil Procedure section 356 during the 10 years former section 1714.45 was in effect. Therefore, they claim, their causes of action did not begin to "accrue" until January 1, 1998.
The argument, which fails to distinguish between the accrual of a cause of action for purposes of determining when a plaintiff is first entitled to sue and the tolling of a statute of limitations on a cause of action after its accrual, is not persuasive. The demurrers in these cases were not sustained on statute of limitations grounds, and Code of Civil Procedure section 356 does not apply. That statute provides: "When the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Section 356 is among several statutes providing that the running of a statute of limitations is tolled or temporarily suspended by a specified condition and will resume when that condition is lifted. (See Cuadra v. Millan (1998) 17 Cal.4th 855, 864-865, 72 Cal.Rptr.2d 687, 952 P.2d 704.) For instance, section 356 applies when a plaintiffs claim against a debtor who has filed a petition for bankruptcy is suspended by the automatic stay provisions of the Bankruptcy Act. (Schumacher v. Worcester (1997) 55 Cal.App.4th 376, 380-381, 64 Cal.Rptr.2d l.)[10]
Former section 1714.45, however, was not a temporary impediment to a product liability action against tobacco manufacturers; instead, it provided automatic *678 and nearly complete immunity from liability. (American Tobacco, supra, 208 Cal.App.3d at pp. 486-487, 255 Cal.Rptr. 280.) Or as stated by the Supreme Court, under the conditions described by the former statute, "a tobacco supplier simply commits no tort against knowing and voluntary smokers by making cigarettes available for their use." (Richards, supra, 14 Cal.4th at pp. 1000, 1003, fn. 8, 60 Cal.Rptr.2d 103, 928 P.2d 1181.) Appellants cite no authority supporting their novel theory that when a statute immunizes a defendant from tort liability, section 356 works both to toll any possible statute of limitations until the law changes and then to impose liability where none previously existed.[11] Appellants' argument about the statute of limitations is actually a retroactivity argument in another guise and is unavailing.
Appellants also claim that their fraud cause of action did not accrue until after the effective date of amended section 1714.45 because they alleged that respondents' fraudulent concealment of the health hazards of smoking continues to this day. Appellants rely on the rule that for purposes of the three-year statute of limitations for fraud, the cause of action is not deemed to have accrued until the discovery of the facts constituting the fraud. (Code Civ. Proc, § 338, subd. (d); see Samuels v. Mix (1999) 22 Cal.4th 1, 14, 91 Cal.Rptr.2d 273, 989 P.2d 701.) The allegations of ongoing concealment are not allegations of delayed discovery, and the argument is without merit.

CONCLUSION
To summarize, we conclude that the Legislature did not intend amended section 1714.45 to apply to causes of action accruing before its effective date, January 1, 1998. Appellants' causes of action accrued no later than 1996 and 1997, when they were diagnosed with lung cancer. Former section 1714.45 barred their lawsuits, and the trial court did not err in sustaining respondents' demurrers without leave to amend. We affirm the judgments.
STEIN, J., and MARCHIANO, J., concur.
NOTES
[1] All statutory references are to the Civil Code unless otherwise stated.
[2] Former section 1714.45 went into effect on January 1, 1988. (Stats. 1987, ch. 1498.)
[3] Both plaintiffs are now deceased and this court has granted the application of their successors in interest for substitution. Joseph Naegele and David Wheeler, co-trustees of the Trust of Edwin Brigham, decedent, and Alicia Ojeda Brigham have been substituted for plaintiff and appellant Brigham. Richard Donaldson has been substituted for plaintiff and appellant Pavolini.
[4] Proposition 51 modified the common law rule of joint and several liability by limiting a tortfeasor's liability for noneconomic damages to a proportion of such damages equal to its own percentage of fault. (Evangelatos v. Superior Court (1988) 44 Cal.3d 1188, 1192, 246 Cal.Rptr. 629, 753 P.2d 585.)
[5] The statute now provides in full:

"(a) In a product liability action, a manufacturer or seller shall not be liable if both of the following apply:
"(1) The product is inherently unsafe and the product is known to be unsafe by the ordinary consumer who consumes the product with the ordinary knowledge common to the community.
"(2) The product is a common consumer product intended for personal consumption, such as sugar, castor oil, alcohol, and butter, as identified in comment i to Section 402A of the Restatement (Second) of Torts.
"(b) This section does not exempt the manufacture or sale of tobacco products by tobacco manufacturers and their successors in interest from product liability actions, but does exempt the sale or distribution of tobacco products by any other person, including, but not limited to, retailers or distributors.
"(c) For purposes of this section, the term 'product liability action' means any action for injury or death caused by a product, except that the term does not include an action based on a manufacturing defect or breach of an express warranty.
"(d) This section is intended to be declarative of and does not alter or amend existing California law, including Cronin v. J.B.E. Olson Corp. (1972) 8 Cal.3d 121 [104 Cal. Rptr. 433, 501 P.2d 1153], and shall apply to all product liability actions pending on, or commenced after, January 1, 1988.
"(e) This section does not apply to, and never applied to, an action brought by a public entity to recover the value of benefits provided to individuals injured by a tobacco-related illness caused by the tortious conduct of a tobacco company or its successor in interest, including, but not limited to, an action brought pursuant to Section 14124.71 of the Welfare and Institutions Code. In such an action brought by a public entity, the fact that the injured individual's claim against the defendant may be barred by a prior version of this section shall not be a defense. This subdivision does not constitute a change in, but is declaratory of, existing law relating to tobacco products.
"(f) It is the intention of the Legislature in enacting the amendments to subdivisions (a) and (b) of this section adopted at the 1997-98 Regular Session to declare that there exists no statutory bar to tobaccorelated personal injury, wrongful death, or other tort claims against tobacco manufacturers and their successors in interest by California smokers or others who have suffered or incurred injuries, damages, or costs arising from the promotion, marketing, sale, or consumption of tobacco products. It is also the intention of the Legislature to clarify that such claims which were or are brought shall be determined on their merits, without the imposition of any claim of statutory bar or categorical defense.
"(g) This section shall not be construed to grant immunity to a tobacco industry research organization.'' (Stats.1997, ch. 570, § 1.)
The substance of current subdivision (e), relating to actions by public entities, actually was added to section 1714.45 as urgency legislation a few months before the elimination of the immunity of tobacco manufacturers. (Stats.1997, ch. 25. effective June 12, 1997.) Section 1714.45 was amended again in 1998, but the changes were not substantive. (Stats. 1998, ch. 485.)
[6] We have not overlooked City and County of San Francisco v. Philip Morris, Inc. (1997) 957 F.Supp. 1130, in which numerous public entities sued cigarette manufacturers for economic damages, including the costs of medical care for indigents suffering from smoking-related diseases. (Id. at p. 1134.) Based on the distinction between claims based on fraudulent conduct and those based on defects in a product, the court granted plaintiffs leave to amend their complaint to allege injury caused by fraud. (Id. at p. 1140.) Whether or not the court's analysis was correct in the context of a public entity's action for economic damages, it does not apply to the personal injury cases before us.
[7] Appellants also state without discussion that former section 1714.45 does not bar their action because even though their injuries were diagnosed before January 1, 1998, they continued after that date. Because appellants have not provided any pertinent legal argument or citation of authority in support of this theory, we do not consider it.
[8] The American Tobacco court explained that under the law existing before the enactment of former section 1714.45, cigarette manufacturers could be held liable for damages resulting from cigarettes if the plaintiff proved that a defect in the cigarette's manufacture or design proximately caused his or her injury. (American Tobacco, supra, 208 Cal.App.3d at p. 489, fn. 4, 255 Cal.Rptr. 280.)
[9] Another illustration of clearly expressed legislative intent appears in Senate Bill No. 340, another bill addressing the immunity provided by section 1714.45. The final version of Senate Bill No. 340, which was approved by the Legislature in 1997 but not signed by the governor, stated in part, "It is the expressed intent of the Legislature that Section 1714.45 never applied to prohibit" certain actions for fraud and misrepresentation or actions by a party who did not voluntarily consume the tobacco product. (Sen. Bill No. 340 (1997-1998 Reg. Sess.) § 1, as amended August 28, 1997.)
[10] Code of Civil Procedure section 356 also may apply when a plaintiff is legally prevented by means other than injunctions or statutory prohibitions from taking action to protect his or her rights, such as when a city charter provision makes administrative proceedings a prerequisite to court proceedings. (Hoover v. Galbraith (1972) 7 Cal.3d 519, 526, 102 Cal. Rptr. 733, 498 P.2d 981; Dillon v. Board of Pension Commrs. (1941) 18 Cal.2d 427, 430-431, 116 P.2d 37.)
[11] The rule is otherwise. A change in the law, either by statute or case law, does not revive claims barred by the statute of limitations. (See Jolly v. Eli Lilly & Co. (1988) 44 Cal.3d 1103, 1116, 245 Cal.Rptr. 658, 751 P.2d 923 and cases cited.)