124 Cal.Rptr.2d 321 (2002)
101 Cal.App.4th 552
Richard DONALDSON, Plaintiff and Appellant,
v.
NATIONAL MARINE, INC., Defendant and Respondent.
Nos. A092876, A093705.
Court of Appeal, First District, Division One.
August 23, 2002.
Review Granted November 26, 2002.
*322 Phillip R. Bonotto, Sacramento, Brian M. Taylor, Rushford & Bonoto, for Appellant.
Harry F. Wartnick, San Francisco, Martha A.H. Berman, Wartnick, Chaber, Harowitz & Tigerman, Daniel U. Smith, Los Angeles, Law Offices of Daniel U. Smith, for Respondent.
Certified for Partial Publication.[*]
STEIN, Acting P.J.
National Marine, Inc., appeals from a judgment, entered after a jury trial, *323 awarding Richard Donaldson $1,616,400 on an action for the wrongful death of Donaldson's adoptive father, Albert Pavolini.

FACTUAL/PROCEDURAL BACKGROUND
Mr. Pavolini spent his adult working life on or around boats and ships. He served in the Navy from 1942 until 1964. He worked for Military Sea Transport from 1966 to 1967, he worked for National Marine (then Cardinal Carriers) from 1967 to 1981 and he worked for other private shipping companies from 1980 until he retired, a few years later. Mr. Pavolini's duties both for the Navy and for the private shipping companies included installing or repairing insulation around pipes and waterlines, and it is undisputed that Mr. Pavolini was exposed to asbestos during his Naval career, and later, while working for the private companies. Mr. Pavolini also began smoking at age 16, and smoked until 1984.
In May 1997, Mr. Pavolini was diagnosed with lung cancer. He died in 1998 of complications resulting from the cancer.
These proceedings began prior to Mr. Pavolini's death, when Mr. Pavolini filed suit against multiple defendants, including several tobacco companies, on the theory that his lung cancer was caused by a combination of his use of tobacco and his exposure to asbestos during his naval career and his employment with the private companies. Although it is not clear from the record, it appears that the defendants originally included companies that manufactured or supplied products containing asbestos to the Navy or to the private shipping companies. In all events, the parties ultimately stipulated to orders severing the tobacco defendants from the asbestos defendants for separate trial.
In the case against the tobacco defendants, the trial court sustained a demurrer to the complaint without leave to amend, and entered judgment in favor of the tobacco defendants. Mr. Pavolini appealed. We consolidated that appeal with a second appeal, filed by Edwin Brigham. (A084371 and A084367.) After Mr. Pavolini died, on July 17, 1988, we permitted his adoptive son, Richard Donaldson,[1] to substitute for Mr. Pavolini. (Mr. Brigham also died while the appeal was pending, and we permitted Joseph Naegele and David Wheeler as co-trustees of the Edwin Naegele trust, and Alicia Ojeda Brigham, to substitute for Mr. Brigham.) We affirmed the judgment of the trial court in both cases, finding that the tobacco defendants were immune from suit under the version of Civil Code section 1714.45 in effect at the time Mr. Pavolini's causes of action accrued.[2](Naegele v. R.J. Reynolds Tobacco Co. (2000) 81 Cal.App.4th 503, 96 Cal.Rptr.2d 666.) Donaldson did not seek review of our decision, but the Supreme Court granted review in Naegele, and has reversed our decision in that case. (Naegele v. R.J. Reynolds Tobacco Co. (2002) 28 Cal.4th 856, 123 Cal.Rptr.2d 61, 50 P.3d 769.)
In the meantime, on September 25, 1999, Donaldson filed suit against National Marine, Inc., as the successor to Cardinal Carriers, seeking damages for Mr. Pavolini's death under the Jones Act, title 46 United States Code Appendix section 688, and under the maritime doctrine of unseaworthiness. National Marine moved to *324 dismiss the case against it on the theory that the San Francisco Superior Court lacked subject matter jurisdiction over Donaldson's maritime claims because Mr. Pavolini's work for Cardinal Carriers took place outside of California's territorial waters. The motion was denied, and the matter went to trial.
At trial, National Marine did not dispute that Mr. Pavolini died of lung cancer. It defended on the theory that Mr. Pavolini's lung cancer was not related to his exposure to asbestos, but resulted from his history of smoking tobacco. National Marine also theorized that even if Mr. Pavolini's exposure to asbestos was a factor in his lung cancer, tobacco was a greater factor. Finally, it argued that in all events Mr. Pavolini's exposure to asbestos during his naval career was far greater than his exposure to asbestos while working for Cardinal Carriers.[3]
The jury rejected Donaldson's unseaworthiness claims. It found, however, that National Marine was negligent under the Jones Act, and that its negligence was a cause of Mr. Pavolini's death. The jury further fixed the damages for Mr. Pavolini's death at $1,796,000, and apportioned fault between Mr. Pavolini, National Marine, the Navy and the tobacco companies, at 10 percent for Mr. Pavolini, and 30 percent each for National Marine, the Navy and the tobacco companies.
National Marine appealed from the judgment, entered on the jury's verdict, of "at least $538,800.00."
The trial court later denied National Marine's motions for a new trial and for judgment notwithstanding the verdict, but granted Donaldson's motion to amend the judgment to make National Marine liable for 90 percent of the jury's verdict. The court found that the Navy and the tobacco companies were immune from Donaldson's claims, and that National Marine, accordingly, was liable for the full amount of damages, less the 10 percent attributable to Mr. Pavolini's fault. The court therefore corrected its judgment to increase Donaldson's award against National Marine to $1,616,400.
National Marine filed a second appeal from the court's order. The appeals have been consolidated, and we consider both here.

DISCUSSION

I.

Subject Matter Jurisdiction[4]
National Marine contends that the San Francisco Superior Court lacked subject matter jurisdiction over Donaldson's claims, and that the trial court, accordingly, erred in denying National Marine's motion to dismiss. The contention is based on an interpretation of maritime law, and a split in California authority as to whether the State's courts have subject matter jurisdiction over actions brought for the death of a seaman outside of the State's territorial waters. After reviewing the historical development of maritime law and its application to actions for negligence and wrongful death, we conclude that California's courts do indeed have subject matter jurisdiction *325 over such actions, even when the actionable wrong or the death occurred outside of the State's territorial limits.
It is well-settled that state courts are competent to try civil maritime suits for injuries to seamen, although they will be required to apply federal maritime law to the seaman's claims. (See, e.g., Engel v. Davenport (1926) 271 U.S. 33, 46 S.Ct. 410, 70 L.Ed. 813.) At first, however, maritime law afforded no cause of action for wrongful death. (The Harrisburg (1886) 119 U.S. 199, 214, 7 S.Ct. 140, 30 L.Ed. 358.) In addition, although the point later was questioned in Moragne v. States Marine Lines (1970) 398 U.S. 375, 377-388, 90 S.Ct. 1772, 26 L.Ed.2d 339, it was believed that no federal common law action for wrongful death existed in the United States. Plaintiffs seeking damages as a result of the wrongful death of a seaman, therefore, were relegated to such relief as might be available under a state's wrongful death statute. (Moragne v. States Marine Lines, supra, 398 U.S. 375, 377, 90 S.Ct. 1772, 26 L.Ed.2d 339; The Tungus v. Skovgaard (1959) 358 U.S. 588, 590-591, 79 S.Ct. 503, 3 L.Ed.2d 524.)
In 1920, however, Congress passed two landmark acts: (1) The Death on the High Seas Act, title 46 United States Code sections 761 et seq. (DOHSA), which established an action for a death occurring beyond a marine league from the shore of any state, and (2) the Jones Act, title 46 United States Code section 688, which extended the protections of the Federal Employers' Liability Act (FELA) to seamen, and thereby provided a right of recovery against employers for negligence resulting in injury or death. (46 U.S.C. Appen. §§ 688, 761; Moragne v. States Marine Lines, supra, 398 U.S. at p. 394.) Problems arose when suit was brought not for negligence, but for unseaworthiness, and the death occurred within a state's territorial waters. In such cases, the death was not covered by DOHSA, which was limited to deaths occurring on the high seas, or by the Jones Act, which was limited to actions arising from negligence. If recovery could be had for such claims, therefore, it still could be had only under state wrongful death statutes, a situation that fostered a lack of consistency in the adjudication of wrongful death claims. Moreover, because the Jones Act preempts state law remedies for the death or injury of a seaman, state statutes could provide no relief to true seamen, with the result that, within a state's territorial waters, recovery was available under a state's wrongful death statute for the death of a longshoreman but not for the death of a Jones Act seaman. (Miles v. Apex Marine Corp. (1990) 498 U.S. 19, 25, 111 S.Ct. 317, 112 L.Ed.2d 275; Moragne v. States Marine Lines, supra, 398 U.S. at pp. 395-396, 90 S.Ct. 1772.)
The Supreme Court, in Moragne, remedied the situation by overruling The Harrisburg, and creating a general maritime remedy for wrongful death. (Moragne v. States Marine Lines, supra, 398 U.S. at p. 409, 90 S.Ct. 1772; and see also Miles v. Apex Marine Corp., supra, 498 U.S. at pp. 25-27, 111 S.Ct. 317.) After Moragne, the Jones Act provided a cause of action for the negligent death of a seaman, irrespective of the place at which the injury occurred or the death took place. In addition, DOSHA provided a cause of action for wrongful death on the high seas, and a general maritime remedy existed for wrongful death caused by unseaworthiness, also irrespective of the location of the injury or death.
That these causes of action exist, of course, does not mean that a state court has subject matter jurisdiction to entertain them. Article III, section 2 of the United States Constitution confers jurisdiction on *326 the federal courts to hear "all cases of admiralty and maritime jurisdiction." Title 28 United States Code section 1333, part of the Judiciary Act of 1789, provides that the district courts "shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." (Italics added.) Thus, the federal courts have exclusive jurisdiction over civil maritime cases unless the remedy is one that is saved to suitors.
National Marine, citing Chromy v. Lawrance (1991) 233 Cal.App.3d 1521, 285 Cal. Rptr. 400, contends that the savings to suitors clause permits state courts to entertain admiralty or maritime actions only if the state's wrongful death statute provides a remedy for that action. The contention assumes that the term "remedy," for purposes of the clause, means that the state's wrongful death statute must itself establish the right to sue for the death at issue. California's wrongful death statutes, Code of Civil Procedure section 377.10 et seq., do not specifically establish a right to sue for maritime deaths occurring outside of the state's territorial limits. Mr. Pavolini died in Tennessee, of injuries alleged to have been received, in part, while working for National Marine as a seaman on or around the Mississippi River. It follows, under National Marine's analysis, that California's wrongful death statute cannot provide a basis for the exercise of state court subject matter jurisdiction over Donaldson's maritime claim.
National Marine's contention, however, is based on two premises that we reject: (1) that California's wrongful death statutes do not apply to deaths occurring outside of the State's territories; and (2) that title 28 United States Code section 1333 allows state courts to entertain only those rights of action specifically recognized by the state in question.
Although California's wrongful death statutes do not specifically apply to deaths occurring outside of California's territories, there is no question but that its courts have subject matter jurisdiction over out-of-state injuries or deaths, assuming a basis for the exercise of personal jurisdiction over the parties. Nothing in the wrongful death statutes suggests that they are limited to deaths on waters only when those waters exist within the state's territorial limits.[5] It is true that state courts traditionally have been reluctant to provide a remedy for a maritime death occurring outside of the state's territorial waters. (See Miles v. Apex Marine Corp. (1990) 498 U.S. 19, 24-25, 111 S.Ct. 317, 112 L.Ed.2d 275; Moragne v. States Marine Lines, supra, 398 U.S. at p. 393, 90 S.Ct. 1772, including fn. 10; and The Hamilton (1907) 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264.) This reluctance, however, arises from issues of choice of law rather than from issues of the competence of a state court to hear the claim. The reasoning is that because the remedy of wrongful death is a creature of statute, not recognized in all jurisdictions, it would be improper to impose it on a claim arising in a jurisdiction that does not itself recognize that remedy.
This point was discussed in McDonald v. Mallory et al. (1879) 77 N.Y. 546, a case often cited for its discussion of the reach of *327 state wrongful death statutes. A vessel, registered in New York, was destroyed by fire while anchored on the high seas, outside of the territory of any jurisdiction. A citizen of New York was killed as a result of the fire, and an action for wrongful death was brought in the New York state court. The defendant argued that New York's statute provided no right of action to recover for wrongs committed outside of the state's territorial limits. The court recognized, as is particularly relevant here, that as a general rule, the law of the jurisdiction where an accident occurred applies to any claim arising from that accident. This meant that if an accident took place in a jurisdiction that did not recognize a claim for wrongful death, the State Court of New York, applying the law of the jurisdiction in which the accident occurred, would not provide a remedy for wrongful death. The court reversed, in essence, that it should apply the law of the jurisdiction where the death occurred. It did not find that it lacked competence to hear a claim arising from a death resulting from a wrong committed outside of the state's territorial waters. (Id. at pp. 550-551.)[6] The court also recognized that a vessel while at sea constructively is part of the territory of the state to which the vessel belongs, and subject to that state's laws. (Id. at pp. 552-553.) It concluded that the New York wrongful death statute applied unless it was displaced by the law of the jurisdiction where the wrong occurred. As the claim arose on the high seas, outside of any state's territorial waters, and as maritime law at that time did not provide an exclusive remedy for a death occurring on the high seas, the court found that the New York statute applied. (Id. at p. 556.) It also found that the state court had jurisdiction to hear the claim. (Ibid.)
Under this analysis, California's courts have subject matter jurisdiction over deaths occurring outside of the State's territorial limits, although they may be required to apply the law of the jurisdiction where the wrong occurred. For purposes of this case, that law is the Jones Act. As the Jones Act recognizes a claim for wrongful death, the superior court was entitled to hear Donaldson's claims.
The second premise in National Marine's argument that we reject is that the "savings to suitors" clause "saves" only those rights of action recognized by state law. The clause refers to remedies, not to rights of action. The difference between *328 the two was explained by the United States Supreme Court in Knapp, Stout & Company v. McCaffrey (1900) 177 U.S. 638, 20 S.Ct. 824, 44 L.Ed. 921. Knapp was a suit brought to enforce a lien for towage. In finding that an Illinois court had jurisdiction over the case, notwithstanding the limitations on jurisdiction imposed by the Judiciary Act of 1789, the Supreme Court distinguished between actions brought against a vessel itself and actions brought against a personal defendant to enforce a lien against a vessel. The court concluded that admiralty courts have exclusive jurisdiction over the first type of action because the remedyan action against the vessel itselfhas all the features of an admiralty proceeding in rem.[7] Suit may be maintained against the owner, however, even though the plaintiff seeks to enforce a lien against the vessel for towage charges, because the remedy a suit brought in personamis a state remedy "saved to suitors." (Id. at pp. 646-648, 20 S.Ct. 824.)
An additional issue arose from the fact that the suit in Knapp, Stout & Company v. McCaffrey, supra, was a suit in equity, and therefore "certainly not a common-law action." (Id. at p. 644, 20 S.Ct. 824.) The court held: "But it will be noticed that the reservation is not of an action at common law, but of a common-law remedy; and a remedy does not necessarily imply an action." (Ibid.) "The true distinction between such proceedings as are and such as are not invasions of the exclusive admiralty jurisdiction is this: If the cause of action be one cognizable in admiralty, and the suit be in rem against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, or if the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute ... of a common-law remedy. The suit in this case being one in equity to enforce a common-law remedy, the state courts were correct in assuming jurisdiction." (Id. at p. 648.)
In the present case, it is true, as National Marine contends, that California, although recognizing an action for wrongful death (Code Civ. Proc., § 377.10 et seq.), does not specifically recognize an action for wrongful death occurring outside of its territorial limits. Under Knapp, however, that fact is of little importance. The question is whether California law recognizes a remedy of an in personam suit for wrongful death. It does, and that remedy is saved to suitors by section 9 of the Judiciary Act. Finally, it is of no consequence that the remedy of a suit for wrongful death was established only after the adoption of the Judiciary Act of 1789. The court in Knapp, citing its earlier opinion in Steamboat Company v. Chase (1872) 83 U.S. (16 Wall.) 522, 21 L.Ed. 369, rejected the argument that the savings clause must be limited to such remedies as were known to the common law at the time of the passage of the judiciary act. (Knapp, Stout & Company *329 v. McCaffrey, supra, 177 U.S. at pp. 646-647, 20 S.Ct. 824.)
In conclusion, where a state, such as California, provides a remedysuch as an action in personamfor a claim, such as a wrongful death claim, the State courts have subject matter jurisdiction over that claim even though the claim is brought under maritime law, and even though the actionable wrong took place outside of California's territorial limits.
In reaching this conclusion we place ourselves squarely in the camp of Garofalo v. Princess Cruises, Inc. (2000) 85 Cal. App.4th 1060, 102 Cal.Rptr.2d 754, where it was found that California courts have jurisdiction over maritime wrongful death actions arising outside of the State's territorial limits. We also find that we disagree with Chromy v. Lawrance, supra, 233 Cal.App.3d 1521, 285 Cal.Rptr. 400.[8]
The decisions in Chromy and in Garofalo were based on different interpretations of the opinion in Offshore Logistics, Inc. v. Tallentire (1986) 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174, which involved a DOSHA action, brought in federal court, and the question of whether state or federal law governed the suit. The court in Offshore Logistics concluded, essentially, that while the savings to suitors clause acts as a jurisdictional savings clause allowing state courts to entertain actions and provide wrongful death remedies for accidents occurring both on state territorial waters and on the high seas, it does not authorize the application of state law to those actions. Rather, "the `saving to suitors' clause allows state courts to entertain in personam maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called `reverseErie' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." (Id, at pp. 222-223.)
The court in Chromy found that Offshore Logistics held that the saving to suitors clause confers concurrent jurisdiction on the states to adjudicate maritime causes of action provided that the jurisdictional requirements of the state court are met. The court then characterized this holding as meaning that DOSHA actions could be tried in state courts only if the state's wrongful death statute expressly extends to deaths on the high seas. (Chromy v. Lawrance, supra, 233 Cal.App.3d at pp. 1526-1527, 285 Cal.Rptr. 400.) Offshore Logistics, however, was a federal court action. The Supreme Court, therefore, had no reason to decide whether the action might have been brought in state court, and did not address that question. It decided only that federal law governed DOSHA claims whether suit was filed in federal or state courts.
In addition, as recognized by the court in Garofalo, although the court in Offshore Logistics discussed the concurrent jurisdiction of the state courts over DOSHA actions, it said nothing from which it might be concluded that "the exercise of concurrent jurisdiction was to be premised upon a state-by-state analysis of whether a wrongful death statute had been given extraterritorial effect at the time DOSHA was enacted." (Garofalo v. Princess Cruises, Inc., supra, 85 Cal.App.4th at p. 1082, 102 Cal.Rptr.2d 754.) To the contrary, "[h]ad the Supreme Court intended the exercise of concurrent jurisdiction to *330 turn on such an inquiry, we would have expected the court to provide a fuller and clearer statement to that effect. Federal courts routinely cite Offshore Logistics for the proposition that state courts have concurrent jurisdiction over DOSHA actions, without any additional analysis of the extraterritorial reach of the state wrongful death statute. [Citations.]" (Id. at pp. 1082-1083, 102 Cal.Rptr.2d 754.) Finally, as also recognized by the court in Garofalo, the desire for uniformity was a factor in the Offshore Logistics court's determination that federal law should apply to all suits irrespective of forum. This desire would be frustrated by a conclusion that the "exercise of concurrent jurisdiction depended upon the extraterritorial reach of each state's wrongful death law." (Id. at p. 1083, 102 Cal.Rptr.2d 754.)[9]
In conclusion, we, like the court in Garofalo, respectfully disagree with the decision in Chromy, and find that California's courts have concurrent jurisdiction to hear in personam maritime actions for wrongful death, although they are required to apply federal law to such actions.

11.-111.[**]

Conclusion
The judgment is affirmed.
We concur: SWAGE R, and MARGULIES, JJ.
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II and III.
[1] Pavolini was the stepfather of Donaldson and his brother, Larry Donaldson, but did not formally adopt Donaldson until shortly before his death. Larry Donaldson passed away before these proceedings.
[2] Civil Code section 1714.45 bars actions for damages due to injuries or death resulting from the use of specified consumer products.
[3] Donaldson did not bring suit against the Navy, and National Marine did not cross-complain against the Navy, apparently because all parties believed the Navy to be immune from Donaldson's claims. It also appears that although Donaldson's complaint named only National Marine and its predecessors, at least some of the other asbestos defendants were involved in the proceedings as late as May 23, 2000. It does not appear that National Marine cross-complained against these other defendants.
[4] It is not contested that the superior court had personal jurisdiction over National Marine.
[5] Contrast the situation where the exercise of personal jurisdiction over a defendant is based on an act committed by that defendant in the forum state, or where the presence of real or personal property within the state's boundaries provides a basis for jurisdiction in rem or quasi in rem. (See Hanson v. Denckla (1958) 357 U.S. 235, 246-247, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283.)
[6] The court held: "It is settled by the adjudications of our own courts that the right to action for causing death by negligence exists only by virtue of the statute, and that where the wrong is committed within a foreign State or country, no action therefor can be maintained here, at least without proof of the existence of a similar statute in the place where the wrong was committed. [Citations.] These decisions rest upon the plain ground that our statute can have no operation within a foreign jurisdiction, and that with respect to positive statute law it cannot be presumed that the laws of other States or countries are similar to our own. The liability of a person for his acts depends, in general, upon the laws of the place where the acts were committed, and although a civil right of action acquired, or liability incurred, in one State or country for a personal injury may be enforced in another to which the parties may remove or where they be found, yet the right or liability must exist under the laws of the place where the act was done. Actions for injuries to the person committed abroad are sustained without proof in the first instance of the lex loci, upon the presumption that the right to compensation for such injuries is recognized by the laws of all countries. But this presumption cannot apply where the wrong complained of is not one of those thus universally recognized as a ground of action, but is one for which redress is given only by statute." (McDonald v. Mallory et al, supra, 77 N.Y. at pp. 550-551.)
[7] And even then, admiralty jurisdiction would not extend to all in rem actions. Admiralty jurisdiction, for example, does not extend to a contract for building a vessel or to work done or materials furnished in its construction. As to such contracts, therefore, it is "competent for the states to enact such laws as their legislatures might deem just and expedient, and to provide for their enforcement in rem." (Knapp, Stout & Company v. McCaffrey, supra, 177 U.S. at p. 643, 20 S.Ct. 824.)
[8] Our conclusion also differs from that reached by the court in Gordon v. Reynolds (1960) 187 Cal.App.2d 472, 10 Cal.Rptr. 73. The court in that case concluded that the federal courts have exclusive jurisdiction over wrongful death actions arising outside of state territorial waters. The court, however, did not consider the effect of the saving to suitors clause on the plaintiff's claim. A decision is not authority for a proposition not considered in the court's opinion. (People v. Myers (1987) 43 Cal.3d 250, 265, fn. 5, 233 Cal.Rptr. 264. 729 P.2d 698.)
[9] In Yamaha Motor Corp., U.S.A. v. Calhoun (1996) 516 U.S. 199, 116 S.Ct. 619, 133 L.Ed.2d 578, the United States Supreme Court held that while federal law governs actions brought under DOSHA and the Jones Act, Congress has not proscribed remedies for the wrongful death of nonseafarers in territorial waters. The court, seemingly retreating somewhat for its earlier stance on the need for uniformity, held that state law could apply to claims arising from such deaths. (Id. at pp. 215-216, 116 S.Ct. 619.)
[**] See footnote *, ante.