[No. B127126. Second Dist., Div. Three. Dec. 29, 2000.]

FRANK GAROFALO, Plaintiff, v.
PRINCESS CRUISES, INC., Defendant and Respondent;
SOUTHERN CALIFORNIA PERMANENTE MEDICAL GROUP,
Intervener and Appellant.

COUNSEL

Grancell, Lebovitz, Stander, Marx & Barnes and David W. Allor for Intervener and Appellant.

Kaye, Rose & Partners, Lawrence W. Kaye and Elsa M. Ward for Defendant and Respondent.

OPINION

**KITCHING, J.**—This case presents a novel issue arising from the intersection of the Death on the High Seas Act (DOHSA), 46 United States Code appendix section 761 et seq., and the California workers' compensation law. The question is whether DOHSA preempts an employer's state law claim in a subrogation action to recover from a third party tortfeasor sums the employer was obligated to pay for an employee's injury. We hold that it does. We also hold that California courts have concurrent jurisdiction over DOHSA claims.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant and plaintiff in intervention Southern California Permanente Medical Group (Kaiser) employed Jackie Garofalo. In the course of her employment with Kaiser, Ms. Garofalo suffered injuries that aggravated her preexisting respiratory ailments. As a result, a workers' compensation proceeding rated Ms. Garofalo 100 percent disabled. A workers' compensation award required Kaiser to provide lifetime medical care for Ms. Garofalo.

In September 1992, Ms. Garofalo and her husband Frank Garofalo went on a cruise on the ship Sky Princess, operated by defendant and respondent Princess Cruises, Inc. (Princess). During the cruise, while the ship was on the high seas, a fire broke out in the ship's cinema. Ms. Garofalo claimed to have sustained injuries when she inhaled smoke from the fire.

In September 1993, Ms. Garofalo and her husband filed a complaint in superior court against Princess, alleging state law claims for personal injuries, medical negligence, and loss of consortium, allegedly resulting from the

shipboard fire. On or about November 18, 1993, Kaiser intervened as a plaintiff under Labor Code sections 3852 and 3853. It sought from Princess the costs of additional medical care it had provided to Ms. Garofalo allegedly as a result of the aggravation of her injuries due to the fire. Kaiser's complaint alleged, in relevant part:

"4. Intervenor refers to and incorporates herein by reference each and every charging allegation contained in plaintiff's Complaint for damages on file herein.

"5. As a proximate result of said injuries to plaintiff and the carelessness and negligence or other conduct or misconduct of the defendants-in-intervention, and each of them, intervenor has been required to furnish, has furnished and will in the future be required to furnish compensation benefits under the provisions of the Workers' Compensation Laws of the State of California to and on behalf of plaintiff in an undetermined amount."

In March 1994, approximately 18 months after the cruise, Ms. Garofalo died as a result of medical conditions allegedly aggravated by the shipboard fire. In December 1994, Frank and his daughter Karen Garofalo filed a second lawsuit in superior court against Princess, alleging state law claims for wrongful death, medical negligence, and negligent infliction of emotional distress. In that complaint, Frank and Karen contended that, "as a direct and proximate result" of Princess's negligence, Ms. Garofalo "was injured in her health, strength and activity . . . all of which injuries subsequently caused death on March 28, 1994." Kaiser did not intervene in the wrongful death action. In April 1997, Frank dismissed the personal injury complaint with prejudice against all defendants. Kaiser remained the sole plaintiff in the personal injury action against Princess.

Princess moved for summary judgment in the Garofalos' wrongful death action, claiming DOHSA, 46 United States Code appendix section 761, preempted the wrongful death claim, and that California courts lacked subject matter jurisdiction over DOHSA claims. In March 1996, the trial court granted the summary judgment motion on the grounds that the Garofalos had failed to oppose it. Thus, the only remaining litigation was Kaiser's subrogation claim in the first personal injury action, seeking costs of medical care provided to Ms. Garofalo.

In March 1998, Princess moved for summary judgment against Kaiser. It argued, inter alia, that DOHSA preempted Kaiser's state court claim for negligence as a matter of law, and that Kaiser's negligence complaint against

Princess failed for lack of evidence of causation. Kaiser opposed the motion. It argued that Princess had not established that DOHSA preempted the suit, and that triable issues of fact existed regarding causation.

On May 7, 1998, the trial court issued a minute order denying Princess's motion for summary judgment. The order stated: "The Court concludes that there exist triable issues of fact concerning whether any exposure to smoke by Ms. Garofalo aggravated her medical condition, and that defendant has not shown that it is entitled to judgment as a matter of law."

Princess subsequently filed a petition for writ of mandate. This court issued an alternative writ of mandate and ordered the trial court to vacate its order denying summary judgment "insofar as the order is based on any finding that the action is not preempted by the federal Death on the High Seas Act (DOHSA) (46 U.S.C. Appen. § 761); or [¶] . . . in the alternative [¶] SHOW CAUSE . . . why a peremptory writ of mandate should not issue directing you to enter an order based on the determination the action is preempted by DOHSA."

On July 21, 1998, the trial court determined that DOHSA preempted the present action and vacated the May 7, 1998 order. The trial court issued a new minute order, granting Princess' motion for summary judgment. That order concluded that under *Dooley v. Korean Air Lines Co.* (1998) 524 U.S. 116 [118 S.Ct. 1890, 141 L.Ed.2d 102], DOHSA preempted the action and that the court lacked subject matter jurisdiction. The court entered judgment and Kaiser filed a timely notice of appeal.

## CONTENTIONS

Kaiser contends that DOHSA does not govern its claims, because (1) DOHSA should not be applied for the benefit of a wrongdoer; (2) DOHSA only preempts wrongful death actions, not the personal injury action in which Kaiser intervened; (3) Kaiser has an independent property right, not derived from Ms. Garofalo's wrongful death claim; and (4) DOHSA does not apply because Kaiser does not contend the shipboard fire caused Ms. Garofalo's death.

Princess asserts that (1) DOHSA provides the exclusive remedy for wrongful death and survival actions caused by an injury occurring on the high seas; (2) Kaiser's claim is derivative of Ms. Garofalo's and because DOHSA preempts her claim, DOHSA also preempts Kaiser's claim; (3) Kaiser has asserted the shipboard fire was a cause of Ms. Garofalo's death, and there is no material issue of fact on this point; and (4) DOHSA applies

regardless of whether the high seas injury was the sole cause or a contributing cause of Ms. Garofalo's death.

## DISCUSSION

### 1. *Standard of review.*

The standards applicable to our review of a summary judgment motion are well settled. Summary judgment is properly granted if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Spray, Gould & Bowers v. Associated Internat. Ins. Co.* (1999) 71 Cal.App.4th 1260, 1266 [84 Cal.Rptr.2d 552].) "A defendant . . . has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (o)(2).) ■ Because our review of the grant or denial of summary judgment involves pure questions of law, we review the record independently. (*Wilkins v. National Broadcasting Co.* (1999) 71 Cal.App.4th 1066, 1074 [84 Cal.Rptr.2d 329].)

"As a summary judgment motion raises only questions of law regarding the construction and effect of supporting and opposing papers, this court independently applies the same three-step analysis required of the trial court. We identify issues framed by the pleadings; determine whether the moving party's showing established facts that negate the opponent's claim and justify a judgment in the moving party's favor; and if it does, we finally determine whether the opposition demonstrates the existence of a triable, material factual issue. [Citations.]" (*Tsemetzin v. Coast Federal Savings & Loan Assn.* (1997) 57 Cal.App.4th 1334, 1342 [67 Cal.Rptr.2d 726].)

■ A challenge to the subject matter jurisdiction of a court may properly be brought on summary judgment. (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1036 [25 Cal.Rptr.2d 539, 863 P.2d 784].) Likewise, interpretation of a statute, including its preemptive effect, is a question of law which may be considered on summary judgment. (Cf. *San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 792 [75 Cal.Rptr.2d 534].)

### 2. *An employer's subrogation rights under California workers' compensation laws.*

■ When an employee is injured in the course of his or her employment, California's workers' compensation laws generally provide the employee's

exclusive remedy against the employer. (*Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp.* (1998) 17 Cal.4th 632, 637 [71 Cal.Rptr.2d 851, 951 P.2d 420]; *Finney v. Manpower, Inc.* (1981) 123 Cal.App.3d 1066, 1069 [177 Cal.Rptr. 74].) However, the workers' compensation laws do not preclude the employee from suing a negligent third party proximately responsible for his or her industrial injuries. (Lab. Code, § 3852; *Employers Mutual Liability Ins. Co v. Tutor-Saliba Corp., supra,* 17 Cal.4th at p. 637.)

Labor Code section 3852[1] also provides that an employer who is obligated to pay a workers' compensation award for an industrial injury has the right to sue a third party responsible for the injury in order to recoup the amount paid to the employee. "When an employee is injured by a third party's tortious act, an employer is indirectly injured to the extent the employer must pay out workers' compensation benefits." (*San Diego Unified Port Dist. v. Superior Court* (1988) 197 Cal.App.3d 843, 846 [243 Cal.Rptr. 163].) Therefore, "[u]nder Labor Code section 3852, an employer who pays work-ers['] compensation benefits to an employee may sue a third party in order to recover a sum equivalent to the benefits which the employer must provide the employee, if the third party, and not the employer, is responsible for the employee's injury." (*County of San Diego v. Sanfax Corp.* (1977) 19 Cal.3d 862, 868 [140 Cal.Rptr. 638, 568 P.2d 363], fn. omitted.) To this end, the employer may intervene in the employee's suit, or obtain recovery through various other procedural means. (*San Diego Unified Port Dist. v. Superior Court, supra,* 197 Cal.App.3d at p. 846.)

■ The employer may also seek recovery from a third party tortfeasor who subsequently injures the employee in a nonindustrial accident, if the employer thereby becomes obligated to pay additional compensation such as medical benefits. For example, in *Abdala v. Aziz* (1992) 3 Cal.App.4th 369 [4 Cal.Rptr.2d 130], employee Abdala sustained an industrial back injury. The workers' compensation carrier became obligated to provide medical and other benefits to Abdala. Weeks after the industrial injury, Abdala was injured in an automobile accident which aggravated her back injury. The carrier was obligated to pay the additional medical bills resulting from the automobile accident. The court reasoned that, "section 3852 et seq. must be interpreted to allow employers subrogation rights whenever, and to whatever extent, an employee suffers a subsequent tortious injury *which also increases the employer's liability for compensation.* This is true whether or not that

---

[1]Labor Code section 3852 provides in part: "Any employer who pays, or becomes obligated to pay compensation . . . may likewise make a claim or bring an action against the third person. In the latter event the employer may recover in the same suit, in addition to the total amount of compensation, damages for which he or she was liable including all salary, wage, pension, or other emolument paid to the employee or to his or her dependents."

subsequent injury is industrial in nature." (*Abdala v. Aziz, supra,* 3 Cal.App.4th at p. 375.)

The employer's right to recoup these costs from a third party merely codifies the principles of equitable subrogation. (*Employers Mutual Liability Ins. Co. v. Tutor-Saliba Corp., supra,* 17 Cal.4th at p. 637; *County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at p. 876, fn. 7.) Accordingly, "[w]here . . . the employer intervenes [in an employee's suit against a third party tortfeasor], its status is akin to that of a subrogee." (*Demkowski v. Lee* (1991) 233 Cal.App.3d 1251, 1258 [284 Cal.Rptr. 919].) Under Labor Code section 3851, the employer's subrogation right survives the employee's death.

■ Workers' compensation subrogation provisions are procedural, not substantive. (*County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at p. 872 ["These statutory provisions are 'primarily procedural.' "]; *Breese v. Price* (1981) 29 Cal.3d 923, 929 [176 Cal.Rptr. 791, 633 P.2d 987].) Moreover, "[t]he workers['] compensation statutes governing employer and employee actions against third parties do not define the substantive law which determines whether an employee or an employer will in fact recover. [Citation.] Instead, the substantive law which governs employer and employee actions is usually the general tort law." (*County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at pp. 873-874.)

In bringing a subrogation action under Labor Code section 3852, the employer stands in the same shoes as its injured employee. Its action is purely derivative of the employee's action. The employer's "right to recover workers' compensation benefits derives from and does not extend beyond the employee's tort remedy against the negligent third party." (*Demkowski v. Lee, supra,* 233 Cal.App.3d at p. 1258.) "Substantively, as well as procedurally, employer and employee actions are interchangeable: regardless of who brings an action, it is essentially the same lawsuit." (*County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at p. 874.) As a subrogee, an employer's rights "do not differ from those which would be conferred by an assignment of the same claim." (*Finney v. Manpower, Inc., supra,* 123 Cal.App.3d at p. 1070.) For that reason, an insurance carrier or employer "may not recover any damages in excess of those recoverable by the employee." (*San Diego Unified Port Dist. v. Superior Court, supra,* 197 Cal.App.3d at p. 847; *Breese v. Price, supra,* 29 Cal.3d at p. 928.) "Indeed, it would be anomalous for an employer or insurer to recover damages greater, in nature or amount, than those afforded the injured employee." (*Breese v. Price, supra,* at p. 928.)

3. *The Death on the High Seas Act.*

In 1920, Congress passed DOHSA, 46 United States Code appendix section 761 et seq., creating a wrongful death action for deaths occurring on

the seas more than three miles from shore. (*Mobil Oil Corp. v. Higginbotham* (1978) 436 U.S. 618, 620 [98 S.Ct. 2010, 2012, 56 L.Ed.2d 581].) Until passage of DOHSA, " 'there was no remedy for death on the high seas caused by breach of one of the duties imposed by federal maritime law.' [Citation.] [¶] It was in this atmosphere that Congress considered legislation designed to provide a uniform and effective wrongful death remedy for survivors of persons killed on the high seas." (*Offshore Logistics, Inc. v. Tallentire* (1986) 477 U.S. 207, 214 [106 S.Ct. 2485, 2490, 91 L.Ed.2d 174].)

Section 1 of DOHSA (46 U.S.C. appen. § 761(a)) provides in pertinent part: "[w]henever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."

■ DOHSA limits recovery to " 'a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is sought.' [Citation.]" (*Dooley v. Korean Air Lines Co., supra,* 524 U.S. at p. 122 [118 S.Ct. at p. 1894].) Thus, DOHSA authorizes recovery for the DOHSA beneficiaries' pecuniary losses only; it does not authorize recovery for the decedent's own losses, nor does it allow damages for nonpecuniary losses. (*Ibid.*)

Appendix section 765 of 46 United States Code provides a limited "survival provision." "If a person die[s] as the result of such wrongful act, neglect, or default as is mentioned in section 761 of this title during the pendency in a court of admiralty of the United States of a suit to recover damages for personal injuries in respect of such act, neglect, or default, the personal representative of the decedent may be substituted as a party and the suit may proceed as a suit under this chapter for the recovery of the compensation provided in section 762 of this title." (*Ibid.*)

As the United States Supreme Court has explained, "The Death on the High Seas Act . . . announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages. [Citation.] The Act does not address every issue of wrongful-death law, . . . but when it does speak directly to a question, the

courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." (*Mobil Oil Corp. v. Higginbotham, supra,* 436 U.S. at p. 625 [98 S.Ct. at p. 2014].)

The death itself need not actually occur on the high seas in order for DOHSA to apply. The key inquiry is where the death-producing event occurred. DOHSA's provisions have "been held to refer to the site of an accident on the high seas, not to where death actually occurs or where the wrongful act causing the accident may have originated." (*Bergen v. F/V St. Patrick* (9th Cir. 1987) 816 F.2d 1345, 1348; *Motts v. M/V Green Wave* (5th Cir. 2000) 210 F.3d 565, 569-570; *Howard v. Crystal Cruises, Inc.* (9th Cir. 1994) 41 F.3d 527.) For example, in *Motts v. M/V Green Wave,* a seaman's hip and pelvis were crushed in an accident while the ship was on the high seas. The ship's personnel and management company failed to provide adequate medical care for him for over two weeks. The seaman eventually underwent surgery in Texas and died onshore approximately a month after the accident. The Fifth Circuit Court of Appeals held that DOHSA applied, "even though all of [the ship management company's] actions and Motts's death occurred onshore." (*Motts v. M/V Green Wave, supra,* 210 F.3d at p. 570.)

### 4. *DOHSA preempts state wrongful death and survival claims when death is caused by a wrongful act occurring on the high seas.*

Several United States Supreme Court decisions address the relationship between DOHSA, state wrongful death laws, and the general maritime law of the United States.

■ We preface our discussion by quoting a cogent description of how wrongful death and survival actions differ. "Although they are often lumped together without any distinction, [citation], they are, in fact, quite distinct. [Citation.] [¶] A wrongful death cause of action belongs to the decedent's dependents (or closest kin in the case of the death of a minor). It allows the beneficiaries to recover for the harm that *they* personally suffered as a result of the death, and it is totally independent of any cause of action the decedent may have had for his or her own personal injuries. Damages are determined by what the beneficiaries would have 'received' from the decedent and can include recovery for pecuniary losses like lost monetary support, and for non-pecuniary losses like loss of society. [Citation.] A survival action, in contrast, belongs to the estate of the deceased (although it is usually brought by the deceased's relatives acting in a representative capacity) and allows recovery for the injury to the *deceased* from the action causing death. Under a survival action, the decedent's representative recovers for the decedent's

pain and suffering, medical expenses, lost earnings (both past and future), and funeral expenses." (*Calhoun v. Yamaha Motor Corp., U.S.A.* (3d Cir. 1994) 40 F.3d 622, 637, affd. (1996) 516 U.S. 199 [116 S.Ct. 619, 133 L.Ed.2d 578].)

In *Mobil Oil Corp. v. Higginbotham, supra,* 436 U.S. 618, the court held that in an action for wrongful death on the high seas, the appropriate measure of damages is that established by DOHSA. There, passengers on a helicopter flight were killed in a crash over the high seas. The plaintiffs, decedents' widows, sought damages for loss of society under the general maritime law. The court found that, because DOHSA represented Congress's considered judgment on the issue of recovery of damages for wrongful death on the high seas, the plaintiffs were limited to pecuniary losses. Thus, the plaintiffs could not supplement their DOHSA recovery with claims brought pursuant to the general maritime law. (*Id.* at pp. 623-625 [98 S.Ct. at p. 2015].)

In *Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. 207, the court held that DOHSA preempted Louisiana's wrongful death statute. There, widows of two drilling platform workers killed in a helicopter crash over the high seas brought wrongful death claims under Louisiana's wrongful death statute, as well as under DOHSA and the Outer Continental Shelf Lands Act. The plaintiffs relied upon DOHSA's section 7, which provides in relevant part, "The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." (46 U.S.C. appen. § 767.) They argued that section 7 therefore allowed them to maintain claims for their husbands' deaths under state laws. After tracing the legislative history of DOHSA, the Supreme Court held that the statutory language was not meant to preserve the applicability of state law wrongful death statutes and remedies outside territorial waters, but was merely a jurisdictional saving clause. The court found: "Once it is determined that § 7 acts as a jurisdictional saving clause, and not as a guarantee of the applicability of state substantive law to wrongful deaths on the high seas, the conclusion that the state statutes are pre-empted by DOHSA where it applies is inevitable. As we held in *Higginbotham,* Congress has 'struck the balance for us' in determining that survivors should be restricted to the recovery of their pecuniary losses . . . ." (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 232 [106 S.Ct. at p. 2499].) *Offshore Logistics* declined to consider "whether the DOHSA recovery for the beneficiaries' pecuniary loss may be 'supplemented' by a recovery for the decedent's pain and suffering before death under the survival provision of some conceivably applicable state statute that is intended to apply on the high seas." (*Id.* at p. 215, fn. 1 [106 S.Ct. at p. 2490].)

The court's most recent pronouncement on the subject, *Dooley v. Korean Air Lines Co., supra,* 524 U.S. 116, likewise stressed DOHSA's preeminence. In *Dooley,* petitioners were the personal representatives of three passengers killed when the former Soviet Union shot down Korean Air Lines Flight KE007 after the plane strayed into Soviet airspace. The petitioners sought to recover for their decedents' predeath pain and suffering. They argued that although DOHSA did not permit such damages, general maritime law provided for a survival action allowing the decedents' estates to recover for predeath pain and suffering. (*Id.* at p. 120 [118 S.Ct. at p. 1893].) Petitioners contended that, because DOHSA was a wrongful death statute, it had no bearing on the availability of a survival action. (*Id.* at p. 123 [118 S.Ct. at pp. 1894-1895].) The airline, on the other hand, argued DOHSA provided the exclusive cause of action for deaths occurring on the high seas. (*Id.* at p. 119 [118 S.Ct. at pp. 1892-1893].) The Supreme Court granted certiorari to resolve a split in the circuit courts regarding the "availability of a general maritime survival action in cases of death on the high seas." (*Id.* at p. 121 [118 S.Ct. at p. 1893].)

The Supreme Court agreed with the airline that DOHSA provides the exclusive remedy for death on the high seas. "DOHSA expresses Congress' judgment that there should be no such cause of action [for the decedent's pre-death pain and suffering] in cases of death on the high seas. By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas. Petitioners concede that their proposed survival action would necessarily expand the class of beneficiaries in cases of death on the high seas by permitting decedents' estates (and their various beneficiaries) to recover compensation. They further concede that their cause of action would expand the recoverable damages for deaths on the high seas by permitting the recovery of nonpecuniary losses, such as pre-death pain and suffering. Because Congress has already decided these issues, it has precluded the judiciary from enlarging either the class of beneficiaries or the recoverable damages. . . . [¶] The comprehensive scope of DOHSA is confirmed by its survival provision . . . which limits the recovery in such cases to the pecuniary losses suffered by surviving relatives. The Act thus expresses Congress' 'considered judgment,' [citation] on the availability and contours of a survival action in cases of death on the high seas. For this reason, it cannot be contended that DOHSA has no bearing on survival actions; rather, Congress has simply chosen to adopt a more limited survival provision. . . . [¶] In sum, Congress has spoken on the availability of a survival action, the losses to be recovered, and the beneficiaries, in cases of death on the high seas. Because Congress has chosen not to authorize a survival action for a

decedent's pre-death pain and suffering, there can be no general maritime survival action for such damages." (*Dooley v. Korean Air Lines Co., supra,* 524 U.S. at pp. 123-124 [118 S.Ct. at p. 1895].)

■ These cases make clear that (1) DOHSA preempts state wrongful death and survival claims when the incident leading to death occurs on the high seas; and (2) DOHSA limits recovery to pecuniary damages and prohibits litigants from supplementing their DOHSA claims with claims brought either under state law or the general maritime law. (E.g., *Zicherman v. Korean Air Lines Co.* (1996) 516 U.S. 217, 230 [116 S.Ct. 629, 636, 133 L.Ed.2d 596].)

5. *Application of DOHSA to Kaiser's claim.*

■ Applying these principles to the case before us, we conclude that DOHSA preempts Kaiser's state law claim. Because Kaiser stands in Ms. Garofalo's shoes and can have no greater recovery than could Ms. Garofalo, we look to DOHSA's effect on Ms. Garofalo's claim. As Kaiser concedes, DOHSA provides the exclusive remedy for wrongful death and survival actions resulting from death on the high seas, and the Garofalo family has no remedy but DOHSA. Neither does Kaiser.

Preliminarily, we note neither party disputes that the Sky Princess was on the high seas when the fire occurred. It is also clear that, if the fire was a cause of Ms. Garofalo's death, the fact she died in California approximately 18 months later does not affect DOHSA coverage. (E.g., *Motts v. M/V Green Wave, supra,* 210 F.3d at pp. 569-570.)

As set forth above, Kaiser's rights against Princess are strictly derivative of Ms. Garofalo's. Kaiser can have no greater right to recovery than could Ms. Garofalo, its injured employee. The two actions are "interchangeable," and "essentially the same lawsuit." (*County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at p. 874.) Moreover, the California workers' compensation subrogation and intervention provisions were not meant to provide the substantive law governing a claim against a third party tortfeasor; they are procedural only. (*Id.* at pp. 873-874.) Labor Code section 3852 does not guarantee that an employer has a right to recover under the substantive law governing the action. Thus, our analysis of Kaiser's claim must begin and end with an analysis of Ms. Garofalo's claim.

Assuming that injuries on board the Sky Princess caused Ms. Garofalo's death, DOHSA would have governed her claim. *Mobil Oil, Offshore Logistics* and *Dooley* stand for the proposition that DOHSA preempts state

wrongful death claims and survival actions and therefore governs the types of recovery available. DOHSA's survival provision, 46 United States Code appendix section 765, covers exactly the circumstance here: an employee is injured on the high seas, sues, and later dies of the injuries. Under these circumstances, the only action available is for pecuniary damages under DOHSA, 46 United States Code appendix section 761 et seq. Other state law claims are not cognizable. Accordingly, because DOHSA preempts state law wrongful death and survival actions if a decedent dies of high seas injuries, (*Dooley v. Korean Air Lines Co., supra,* 524 U.S. 116), the trial court correctly granted summary judgment in favor of Princess. (E.g., *Jacobs v. Northern King Shipping Co., Ltd.* (5th Cir. 1999) 180 F.3d 713, 719-720 [holding DOHSA preempted claim based upon state survival act].)

### 6. *Kaiser's claims have no merit.*

Kaiser makes several arguments in support of its position, but none are persuasive. First, Kaiser urges that because DOHSA was enacted "for the benefit of the wronged not the wrongdoer," it should not be invoked to the detriment of the decedent's beneficiaries. The law does not support this argument. As Princess points out, DOHSA has frequently been invoked to limit or reduce the recovery that might otherwise have been available to the decedent's family. (E.g., *Dooley v. Korean Air Lines Co., supra,* 524 U.S. 116 [holding DOHSA precludes recovery for decedent's predeath pain and suffering].) Kaiser cites no authority supporting the novel proposition that DOHSA only applies when it favors the decedent's representative or estate.

Second, Kaiser appears to argue that because it did not intervene in the Garofalo wrongful death claim, it can successfully sue on the personal injury claim filed by Ms. Garofalo before her death. *Dooley* made clear, however, that DOHSA preempts all state wrongful death claims and state "survival actions" i.e., claims for personal injury occurring before a decedent's death.

Next Kaiser suggests that "DOHSA only preempts wrongful death and survival actions; it does not preempt actions which are not affected by common law rules of abatement." Kaiser cites no persuasive authority for this reading of the law.

Kaiser also posits that DOHSA should not preempt California law governing workers' compensation subrogation rights, in that DOHSA does not address subrogation rights. Kaiser points out that preemption should be disfavored unless the evidence of preemptive purpose appears in the text and structure of the statute, and DOHSA contains no express preemption clause. However, as explained above, an employer's subrogation rights depend upon

the employee's rights against the tortfeasor. Because DOHSA preempts the employee's state law wrongful death claims and provides the only "survival" remedy for injuries to the decedent occurring before death, DOHSA necessarily preempts Kaiser's state law claims.

In conjunction with its other arguments, Kaiser urges that DOHSA should not apply because Kaiser sued not for wrongful death, but for damages to its property rights. Kaiser attempts to recast its rights as separate from the employee's cause of action, arguing that it has "an independent right of action against Princess for property damage." Apparently Kaiser hopes, in this way, to avoid the fact that its action is derivative of Ms. Garofalo's. In support of its argument, Kaiser retreats to several early cases holding that Labor Code section 3852 created an independent property right. (E.g., *Morris v. Standard Oil Co.* (1926) 200 Cal. 210, 214 [252 P. 605]; *Limited Mutual etc. Ins. Co. v. Billings* (1946) 74 Cal.App.2d 881 [169 P.2d 673].) To the extent these cases can be read to suggest an employer has a cause of action that is not derivative of the employee's cause of action, they are no longer good law. (*County of San Diego v. Sanfax Corp., supra,* 19 Cal.3d at p. 876.)

Finally, Kaiser argues that neither it nor Princess has asserted that the shipboard fire caused Ms. Garofalo's death. Kaiser claims it "does not allege that Ms. Garofalo's death was in any way caused by or resulted from any negligent act committed by respondent or by the fire that occurred on respondent's cruise ship." Therefore, Kaiser posits, DOHSA cannot apply, as DOHSA comes into play only when death is "caused by" the high seas injury or omission. It claims, "Certainly, where neither party to the lawsuit contends that Ms. Garofalo's death resulted in any way from defendant's conduct, the Death On the High Seas Act can have no application."

We find that Kaiser's conduct of the litigation demonstrates it repeatedly has asserted the shipboard fire was a contributing cause of Ms. Garofalo's death. While it is true that Princess has steadfastly maintained the shipboard fire did not injure Ms. Garofalo, much less cause her death, Kaiser has taken the opposite position. Kaiser did not dispute, in response to the separate statement filed by Princess, that Ms. Garofalo "died as a result of medical conditions which Kaiser asserts were aggravated by the shipboard fire." Kaiser argued below, and in this appeal, that Ms. Garofalo's asthma and chronic lung disease were "dramatically worsened" by breathing smoke from the shipboard fire; Ms. Garofalo was not terminally ill prior to the cruise; and her condition was stable. In discovery, Kaiser took the position that Princess was responsible for *all* medical expenses incurred by Ms. Garofalo from approximately the date she returned from the cruise, until the day she

died, nearly $1 million. These assertions are entirely inconsistent with Kaiser's claim that the shipboard fire did not cause Ms. Garofalo's death. If the fire did not play some role in Ms. Garofalo's death, then Kaiser could not have attempted to shift the responsibility for *all* her postcruise medical expenses to Princess. Kaiser cannot now raise a material issue of fact by claiming that the shipboard fire played no role in Ms. Garofalo's death.

*7. DOHSA provides the exclusive remedy as to the high seas tortfeasor when a high seas injury is a contributing cause of death.*

We next consider whether DOHSA comes into play where the high seas injury is one cause, but not the sole cause, of death. We hold that, under such circumstances, DOHSA provides the exclusive measure of recovery for the decedent as against the high seas tortfeasor.

Perhaps because of the catastrophic nature of most high seas deaths, there is a dearth of case law in which the decedent's death was caused by a high seas injury in combination with another cause. Princess points out that where concurrent acts of negligence were the cause of a high seas death, courts have applied DOHSA. (*Bergen v. F/V St. Patrick, supra,* 816 F.2d at p. 1348 [finding it irrelevant to DOHSA coverage that "decisions contributing to the St. Patrick's unseaworthiness may have occurred onshore . . . ." when accident causing death occurred on high seas]; *Motts v. M/V Green Wave, supra,* 210 F.3d at p. 570 [DOHSA applied though ship management company's allegedly negligent failure to establish evacuation plan contributed to fatal injury; "Even though the negligence occurred onshore, the fact that the accident occurred on the high seas implicates DOHSA."].) Princess also notes that, as discussed above, DOHSA applies even where the decedent's death occurs off the high seas, if the injury itself occurred on the high seas.

In other words, DOHSA applies as long as the injury occurs on the high seas, even if some of the negligent actions leading to the accident occurred on land, and even where the decedent's death occurred on land. The operative question is where the accident occurred. Accordingly, here the fact that Ms. Garofalo's preexisting illness did not originate on the high seas does not affect DOHSA coverage.

Moreover, the language of DOHSA does not suggest that the statute applies with any less force when the high seas injury is not the sole cause of death. The statute provides DOHSA applies "[w]*henever* the death of a person shall be *caused* by wrongful act, neglect, or default occurring on the high seas." (46 U.S.C. appen. § 761, italics added.) There is nothing in the plain language of the statute to suggest "caused" means "sole cause." Kaiser

cites no authority, or persuasive argument, suggesting that DOHSA is inapplicable when the high seas injury is not the *sole* cause of death.

We also take note of 46 United States Code appendix section 766, governing contributory negligence. That section provides: "In suits under this chapter the fact that the decedent has been guilty of contributory negligence shall not bar recovery, but the court shall take into consideration the degree of negligence attributable to the decedent and reduce the recovery accordingly." (*Ibid.*) While not directly applicable here, this provision does suggest that even when the death is attributable to more than one cause—the decedent's negligence and the high seas tortfeasor's negligence—DOHSA provides recovery. By analogy, the same should be true here: though there were arguably causes of death other than Princess's alleged negligence, DOHSA nevertheless applies.

For purposes of DOHSA coverage, we see no reason to differentiate between deaths caused solely by a high seas injury and deaths caused by a high seas injury in combination with other factors. We hold that when a high seas injury is a cause, but not the sole cause, of the decedent's death, DOHSA provides the exclusive remedy *as to the high seas tortfeasor.*

Accordingly, we hold that Kaiser's only cause of action is under DOHSA. Because DOHSA preempted Ms. Garofalo's—and thus Kaiser's—California causes of action, the trial court properly granted summary judgment.

8. *California courts have concurrent jurisdiction over DOHSA claims.*

Next we consider whether California courts may exercise jurisdiction over DOHSA claims. The trial court found, based upon *Chromy v. Lawrance* (1991) 233 Cal.App.3d 1521 [285 Cal.Rptr. 400], that California courts lack subject matter jurisdiction over DOHSA claims. In their initial briefs to this court, neither party questioned this conclusion. We requested and have considered supplemental briefing on the issue.

After considering *Chromy*, we respectfully disagree with its holding that California courts lack subject matter jurisdiction over DOHSA claims. We recognize that ambiguity has often bedeviled the development of maritime wrongful death law, including the question of state court jurisdiction. (Cf. *Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 212 [106 S.Ct. at pp. 2488-2489] ["The tortuous development of the law of wrongful death in the maritime context illustrates the truth of Justice Cardozo's observation that '[d]eath is a composer of strife by the general law of the sea as it was for many centuries by the common law of the land.' [Citation.]"].) Nonetheless,

we believe that *Offshore Logistics, Inc. v. Tallentire* makes it clear that state courts have concurrent jurisdiction over DOHSA claims.

" '[S]tate courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Citations.] To give federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Citation.]" (*Yellow Freight System, Inc. v. Donnelly* (1990) 494 U.S. 820, 823 [110 S.Ct. 1566, 1568, 108 L.Ed.2d 834]; *Williams v. Horvath* (1976) 16 Cal.3d 834, 837 [129 Cal.Rptr. 453, 548 P.2d 1125] ["it is now clear that absent an exclusive grant of jurisdiction to the federal courts in the congressional act, state courts of general jurisdiction have concurrent authority to adjudicate federally created causes of action"].)

Article III, section 2, clause 1 of the United States Constitution confers upon the federal courts jurisdiction over admiralty and maritime claims. Section 1333(1) of title 28 of the United States Code provides, "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: [¶] (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors* in all cases all other remedies to which they are otherwise entitled." (Italics added.) This "saving to suitors clause" has long been interpreted to mean that state courts have concurrent jurisdiction over *in personam* maritime claims, i.e., claims against a person; "[a]dmiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien." (*Madruga v. Superior Court* (1954) 346 U.S. 556, 560-561 [74 S.Ct. 298, 301, 98 L.Ed. 290]; 1 Norris, Law of Maritime Personal Injuries (4th ed. 1990) §§ 5:14-5:15, pp. 289-291.) Thus, California courts have concurrent jurisdiction over in personam maritime and admiralty claims. (*D'Aquisto v. Campbell Industries* (1984) 162 Cal.App.3d 1208, 1212 [209 Cal.Rptr. 108]; *Baptiste v. Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789].)

Prior to *Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. 207, courts disagreed about whether a litigant could bring a DOHSA claim in state court. (14A Wright et al., Federal Practice and Procedure (1998) § 3672, p. 337; *Wilson v. Transocean Airlines* (N.D.Cal. 1954) 121 F.Supp. 85, 94-98; Note, *Admiralty: Death on the High Seas by Wrongful Act* (1962) 47 Cornell L.Q. 632, 634-636.) At the heart of the debate was the meaning of section 7 of DOHSA, 46 United States Code appendix section 767. As noted *ante,* that section provides in relevant part that any state statute "giving or regulating rights of action or remedies for death shall not be affected by this chapter."

In addressing whether DOHSA provides the exclusive remedy for wrongful deaths on the high seas, *Offshore Logistics, Inc. v. Tallentire* considered the legislative history and meaning of section 7. The respondents in *Offshore Logistics* argued that section 7 left intact state remedies for wrongful death, an interpretation that would have allowed respondents to supplement DOHSA recovery for pecuniary damages with nonpecuniary damages based upon state law. (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 220 [106 S.Ct. at p. 2493].) In order to address this issue, the Supreme Court examined the "exceedingly confused and often ill informed" congressional debates surrounding the passage of section 7 (477 U.S. p. 225 [106 S.Ct. at p. 2495]), in particular an amendment to the bill introduced by Representative Mann. The court stated that "the first sentence of § 7 was intended only to serve as a jurisdictional saving clause, ensuring that state courts enjoyed the right to entertain causes of action and provide wrongful death remedies both for accidents arising on territorial waters and, under DOHSA, for accidents occurring more than one marine league from shore." (*Id.* at p. 221 [106 S.Ct. at p. 2493].) The court reasoned: "a natural reading of § 7 is that a state statute providing a wrongful death right of action traditionally unavailable at common law would not be 'affected' by DOHSA in the sense of being rendered an incompetent means of invoking state jurisdiction, but the state statute's substantive provisions would not, by virtue of the saving provision, 'extend as a conduct-governing enactment on the high seas' if in conflict with DOHSA's provisions. [Citation.]" (*Id.* at p. 223 [106 S.Ct. at p. 2494].) The court explained that the maritime experts who originally drafted DOHSA intended to preserve concurrent jurisdiction over wrongful death claims arising on state territorial waters. As interpreted at the time DOHSA was enacted, the "saving to suitors" clause had been construed to preserve state court concurrent jurisdiction over common law remedies only. (*Id.* at pp. 223-224 [106 S.Ct. at pp. 2494-2495].) The drafters of DOHSA therefore believed a DOHSA-specific saving clause was required because the "saving to suitors" clause in 28 United States Code section 1333(1) did not necessarily preserve jurisdiction over wrongful death claims, which were not traditional common law remedies. (477 U.S. at pp. 223-224 [106 S.Ct. at pp. 2494-2495].)

The court explained: "In sum, the language of § 7 and its legislative history, as well as the congressional purposes underlying DOHSA, mandate that § 7 be read not as an endorsement of the application of state wrongful death statutes to the high seas, but rather as a jurisdictional saving clause. Viewed in this light, § 7 serves not to destroy the uniformity of wrongful death remedies on the high seas but to facilitate the effective and just administration of those remedies. The recognition of concurrent state jurisdiction to hear DOHSA actions makes available to DOHSA beneficiaries a

convenient forum for the decision of their wrongful death claims. [Citation.] Because the resolution of DOHSA claims does not normally require the expertise that admiralty courts bring to bear, DOHSA actions are clearly within the competence of state courts to adjudicate. [Citations.] Also, the availability of concurrent jurisdiction prevents disunity in the provision of forums to survivors of those killed on the high seas; it ensures that if a seaman and a passenger are killed at sea in the same accident, the beneficiaries of both are able to choose the forum in which they prefer to proceed. [Citations.]" (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at pp. 231-232 [106 S.Ct. at p. 2499].)

Several years after *Offshore Logistics, Chromy v. Lawrance, supra,* 233 Cal.App.3d 1521, considered whether California courts may exercise concurrent jurisdiction over DOHSA actions. While acknowledging *Offshore Logistics*'s holding, *Chromy* concluded that "DOHSA actions may only be tried in state courts if the state's wrongful death statute applies to deaths on the high seas." (*Chromy v. Lawrance, supra,* at p. 1526.) *Chromy* concluded California's wrongful death statute had never been given extraterritorial effect. Accordingly, *Chromy* reasoned California courts lacked jurisdiction over DOHSA claims. In support of its conclusion, *Chromy* cited several pre-*Offshore Logistics* cases and language from a law review article.

We respectfully disagree with *Chromy*'s conclusion that California courts lack concurrent jurisdiction. We do not believe *Offshore Logistics, Inc. v. Tallentire* requires such a restrictive interpretation of the law. Initially, we note that the *Chromy* decision has been criticized as wrongly decided. (Robertson, *Displacement of State Law by Federal Maritime Law* (1995) 26 J. Mar. L. & Com. 325, 351, fn. 131 [Arguing "[t]he *Chromy* decision is plainly wrong in light of the definitive holding in *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 232[, *supra,*] [106 S.Ct. 2485, 2499] that 'DOHSA actions are clearly within the competence of state courts to adjudicate.' "].)

Indeed, we conclude *Offshore Logistics* unequivocally held state courts have concurrent jurisdiction over DOHSA actions. *Offshore Logistics* did not intend that the exercise of concurrent jurisdiction was to be premised upon a state-by-state analysis of whether a wrongful death statute had been given extraterritorial effect at the time DOHSA was enacted. Had the Supreme Court intended the exercise of concurrent jurisdiction to turn on such an inquiry, we would have expected the court to provide a fuller and clearer statement to that effect. Federal courts routinely cite *Offshore Logistics* for the proposition that state courts have concurrent jurisdiction over DOHSA actions, without any additional analysis of the extraterritorial reach of the state wrongful death statute. (E.g., *Baris v. Sulpicio Lines, Inc.* (5th Cir.

1991) 932 F.2d 1540, 1543, 1546; *Bosdorf v. Beach* (S.D.Fla. 1999) 79 F.Supp.2d 1337, 1345; *Pierpoint v. Barnes* (D.Conn. 1995) 892 F.Supp. 60, 61; *DeBello v. Brown & Root Inc.* (E.D.Tex. 1992) 809 F.Supp. 482, 485, fn. 2.)

Moreover, the desire for uniformity provides the rationale for much DOHSA jurisprudence. (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 230 [106 S.Ct. at p. 2498] [finding it "incongruous" that "a Congress seeking uniformity in maritime law would intend to allow widely divergent state law wrongful death statutes to be applied on the high seas"]; *Wilson v. Transocean Airlines, supra,* 121 F.Supp. at p. 90 [DOHSA was "drawn with the purpose to afford an exclusive, uniform federal right of action for death on the high seas"]; cf. *Mobil Oil Corp. v. Higginbotham, supra,* 436 U.S. at p. 624 [98 S.Ct. at p. 2014] [recognizing value of uniformity in DOHSA jurisprudence].) For example, *Offshore Logistics* noted that recognizing concurrent jurisdiction would avoid "disunity in the provision of forums" to DOHSA beneficiaries. (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 232 [106 S.Ct. at p. 2499].) If the exercise of concurrent jurisdiction depended upon the extraterritorial reach of each state's wrongful death law, the exercise of concurrent jurisdiction would hardly be uniform. Such a rule would inject an unnecessarily confusing layer of analysis into what should be a clear-cut inquiry, insofar as a determination of the jurisdictional question would require a rather arcane interpretation of the intended reach of state statutes, apparently at the time DOHSA was enacted.

Additionally, premising concurrent jurisdiction on the intended reach of state wrongful death statues is incongruous. As *Offshore Logistics* explained, at the time DOHSA was enacted, it was unclear at best whether state wrongful death statutes could extend to deaths occurring on the high seas. In *The Harrisburg* (1886) 119 U.S. 199 [7 S.Ct. 140, 30 L.Ed. 358], the Supreme Court held that, in the absence of an applicable state or federal statute, federal maritime law provided no wrongful death cause of action to survivors of persons killed on the high seas. (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 212 [106 S.Ct. at p. 2489].) Prior to the enactment of DOHSA, in an attempt to soften the effect of this harsh rule, some state wrongful death statutes were held to apply on the high seas. As *Offshore Logistics* noted, such application of state law was "questionable" and rested upon farfetched theories. (*Id.* at p. 213 [106 S.Ct. at p. 2489].) Moreover, " '[t]he general understanding was that the statutes of the coastal States, which provided remedies for deaths within territorial waters, did not apply beyond state boundaries.' " (*Ibid.* [quoting *Moragne v. States Marine Lines, Inc.* (1970) 398 U.S. 375, 393, fn. 10 [90 S.Ct. 1772, 1784, 26 L.Ed.2d 339]].) Thus, when DOHSA was enacted it was not clear that a state

statute *could* substantively apply to high seas deaths. *Offshore Logistics* explained, "To read § 7 as intended to preserve intact largely nonexistent or ineffective state law remedies for wrongful death on the high seas would, of course, be incongruous." (*Offshore Logistics, Inc. v. Tallentire, supra*, 477 U.S. at p. 230 [106 S.Ct. at p. 2498].) It seems equally incongruous to make the exercise of concurrent jurisdiction dependent upon the existence of those same "largely nonexistent or ineffective" remedies. To the extent *Chromy* holds the exercise of concurrent jurisdiction depends upon whether a state's wrongful death statute *currently* applies to high seas deaths, such an analysis is equally fruitless, because DOHSA clearly preempts the substantive provisions of state wrongful death statutes.

Princess argues *Chromy* was rightly decided. In essence, Princess and *Chromy* interpret section 7's language (that DOHSA shall not affect "[t]he provisions of any State statute giving or regulating rights of action or remedies for death") to mean "giving or regulating rights of action or remedies for death *on the high seas.*" *Chromy* relied upon, inter alia, *Gordon v. Reynolds* (1960) 187 Cal.App.2d 472 [10 Cal.Rptr. 73], a case decided long before *Offshore Logistics. Gordon* rejected the view that a California court could hear a DOHSA claim and found federal court jurisdiction over DOHSA claims was exclusive. (*Gordon v. Reynolds, supra*, 187 Cal.App.2d at p. 477.) *Gordon* reasoned that section 7 did not operate to confer concurrent jurisdiction, because "Code of Civil Procedure, section 377, does not give or regulate any right of action or remedy for the death here involved." (*Gordon*, at p. 478.) In other words, *Gordon* reasoned that section 7 was only meant to preserve state law remedies for high seas deaths that were already in existence, apparently at the time DOHSA was enacted.

The problem with this analysis is that, as discussed, *Offshore Logistics* did not adopt it. *Offshore Logistics* gives no indication that the Supreme Court adopted the "narrow" view espoused by *Chromy*. Instead, the broad language used by *Offshore Logistics*,[2] as well as its lack of any discussion qualifying its broad pronouncement of concurrent jurisdiction, persuades us that *Offshore Logistics* did not intend to adopt *Chromy*'s narrow interpretation of section 7.

---

[2]Moreover, the Supreme Court cited in support of its decision Note, *Admiralty: Death on the High Seas by Wrongful Act, supra*, 47 Cornell L.Q. 632, 638. The author of that commentary explained that, at the time the article was written, the courts were split regarding whether states had concurrent jurisdiction over DOHSA claims. (47 Cornell L.Q. at pp. 634-635.) The commentator explained one source of confusion was the meaning of the saving to suitors clause, 28 United States Code section 1333, which the commentator considered as one source of state court jurisdiction over DOHSA claims. The commentator discussed the various views prevailing at the time regarding whether the saving to suitors clause allowed concurrent DOHSA jurisdiction. It explained that under a broad view, a court might find concurrent jurisdiction warranted by virtue of previous state litigation concerning any tort which occurred on the high seas. "At the other extreme is a construction of the 'saving clause' which requires a state court to have specifically exercised jurisdiction in a case involving the

Accordingly, we are compelled to part company with *Chromy*. We hold that California courts may exercise concurrent jurisdiction over DOHSA claims.

## DISPOSITION

The judgment is affirmed in part and reversed in part in accord with the opinions expressed herein.

Each side to bear its own costs.

Klein, P. J., and Croskey, J., concurred.

---

wrongful death of a non-seaman which occurred on the high seas." (47 Cornell L.Q. at p. 637.) The commentator argued for adoption of the "broad" view, citing various policy considerations. (*Id.* at pp. 636-639.) The Supreme Court cited the Note favorably (*Offshore Logistics, Inc. v. Tallentire, supra,* 477 U.S. at p. 232 [106 S.Ct. at p. 2499]); suggesting the court adopted the "broad" view espoused therein.